## No. 10,321.

## JAMES H. COSGROVE VS. HIS CREDITORS.

Property purchased in the name of one of the spouses during the existence of the community of acquets and gains, is presumed to belong to the community, and this presumption continues until rebutted by conclusive proof that the property is the separate property of the wife. The burden of proof is on the wife. Creditors of the community can proceed directly against the property to subject it to their claims.

Where the insolvent debtor failed to put on his schedule property standing in the name of his wife, the creditors can, by opposition, require said property to be placed thereon and the wife is driven to proof of ownership.

In such a case the husband is a competent witness in his own interest, as to his good faith in framing his schedule, and the wife is a competent witness in favor of her separate interest.

Creditors can not require the separation of property between husband and wife. A demand that the value of certain improvements placed upon the wife's separate property during the community, and in part with community funds, be placed upon the insolvents' schedule, is in effect to demand the separation of property between husband and wife, which the law forbids.

APPEAL from the Eleventh District Court, Parish of Natchitoches, *Pierson*, J.

*Jack & Dismukes* for Mrs. Julia A. Cosgrove, wife of the Insolvent :

"Fraud as a ground of nullity, must be urged in a direct action where an actual title has passed accompanied with possession." Austin Thorpe & Co. vs. DaRocha, Becker & Co., 23 Ann. 46; *vide* 15 Ann. 302; 23 Ann. 499, 688, 175; 24 Ann. 224; 29 Ann. 12.

A creditor is without right "to sue individually to annul a contract made before the time his debt accrued." C. C. 1993; 15 Ann. 177-179; 14 Ann. 475; 12 Ann. 173-207; 6 Ann. 89; 1 Ann. 132.

The above rule is subject to only one exception under our jurisprudence and that is where it is charged and shown that "At the time of making the contract the debtor designed to defraud his future creditors." C. C. 1988; 5 N. S. 96, 654; 2 La. 543; 4 L. 142, 261; 5 L. 151; 2 Ann. 168; 6 Ann. 87; 12 La. 197.

So, where the father made a purchase in the name of a minor child, it was held that "Subsequent creditors could not contest the purchase." 5 N. S. 634; 5 L. 126; 2 Ann. 956; 5 Ann. 487.

"Where a donation to a wife under which she holds is a real contract intended by the parties and the husband to be binding, his creditors cannot enquire collaterally into the consideration. A direct action must be brought to avoid it." Hanna vs. Pritchard, 6 Ann. 731.

"The suit of a creditor of the husband to have the transfer made by the latter to his wife in payment of her rights rescinded and annulled on the ground of fraudulent simulation, cannot be viewed in any other light than that of a revocatory action and is prescribed in one year." Succession of Britto vs. Succession of Fabre. 34 Ann. 336; Renshaw vs. Howty and Husband, 39 Ann. 608; see also 6 Ann. 87; 14 Ann. 106; 30 Ann. 966.

"In a revocatory action three things are requisite to maintain it."

1. Fraud on the part of the vendor.
2. Knowledge on the part of the vendee.
3. "Actual injury to other creditors." (Seixas, Syndic, vs. Citizens' Bank, 38 Ann. 424) — Query: . How could an act of any kind be said to operate an actual injury to a party in no wise concerned in it, and how could he be considered a creditor when his right only accrued years afterward?

"One of the married couple may either by marriage contract or during the marriage give to the other, in full property, all that he or she might give to a stranger." C. C. 1746. See also 1 Ann. 42; 2 Ann. 30; 13 Ann. 143; 15 Ann. 505.

They are subject to reduction where they exceed two-thirds of the property of the disposer, "if he leaves, at his decease, a legitimate child one-half if he leaves two children, and one-third if he leaves three or a greater number." C. C. 1493. See also 15 Ann. 511; 18 Ann. 590; 22 Ann. 344.

"A donation *inter vivos* of movable property can only be made in two ways, by act before a notary and two witnesses. or by actual manual delivery, and one who claims a movable in virtue of a donation must prove that the donation was specifically made in one or the other of the two ways." Kirkpatrick, wife of O'Brien, vs. Finney, Burnes et al, 30 Ann. 223.

"A donation made in money, by the husband to the· wife, in the form of a manual gift, is valid without the formality of a notarial act of transfer. There is no foundation for the assertion that¦the provisions of Art. 1749 apply to donations by public act and not to manual gifts. which require no formality after delivery." Succession of Hale 26 Ann. 195.

"If the cause expressed in the contract should be one that does not exist, yet the contract cannot be invalidated if the party can show the existence of a true and sufficient consideration." C. C. 1900. See Brown vs. Brown, 30 Ann. 969.

In Seeman et al vs. Clark et al, 36 Ann. 744, it was distinctly held, "That where an immovable has been donated to a wife by her parents by a private act defective in form; the defect may be ratified and confirmed by subsequent acts on the part of the heirs of the donor, such as we think are established in this case. But, in any event, the husband, who has held the property as the paraphernal estate of his wife as her agent, cannot raise objections to her title or make his possession the basis of a prescription of title. His heirs and creditors have no greater rights."

"Separate property is that which either party brings into the marriage or acquires during the marriage by inheritance or by donation made to him or her particularly." C. C. 2334; 23 Ann. 372.

The wife has the right to administer her paraphernal property, and may at will and at any time withdraw its administration from the hands of the husband, and in such case and so long as she may administer it, will she be entitled to receive and enjoy its fruits and revenues. C. C. Arts. 2384–5–6–7–8–9. She, of course, bearing her proportion of the marriage charges, "equal, if need be, to half her income." Burns vs. Thompson, 39 Ann. 377.

### *T. D. Foster* for Mrs. M. Labyche and Others, Opponents:

Judgment overruling an exception, that an opposition is filed too late, by consent, waives the objection.

Cited to answer the appeal, appellees can have judgment amended on any point which affects their rights as between them and appellant.

R. S. 1802 and general principles authorized an action, whether by opposition or otherwise, on part of creditors to reduce property of insolvent to possession of creditors, without making syndic a party, especially when proceedings are suspended by opposition. R. S. 1402, 1403; 7 N. S. 33; 2 Ann. 548; 599; 7 Ann. 136; 14 Ann. (reprint) p. 625, Williams vs. Hawthorne; *ibid* p. 790, Louaillier vs. Castile, 23 Ann. 649; 28 Ann. 287.

Oppositions filed within ten days, suspend all effects of meeting creditors. R. S. 1802; 1 L. 342; 2 N. S. 57; 3 L. 217; 17 A. 85.

Prescription of one year does not apply to an action to reduce property bought in the name of the wife, to possession of the community.

In a case where the husband is seeking the benefit of the insolvent laws, and creditors oppose seeking to have certain property, claimed by the wife, surrendered to them, the wife having been made a party defendant, both husband and wife being interested, and the interest of the wife not being separate, in the sense of being independent of, disconnected with and distinct from that of the husband, so that the testimony of one will not affect the interest of the other, neither can testify. No effect with or without a bill can be given to their testimony if admitted. 28 Ann. 607; C. C. 2281; 33 Ann. 612, 613; 23 Ann. 556; 35 Ann. 570; 30 Ann. 377, 632 (see 27 Ann. 315); 32 Ann. 668; C. C. 12; 12 R. 76; 23 Ann. 747.

C. C. 1993 and 1698 et seq. do not apply to a case like this, when title to property, bought during community, in name of the wife, is sought to be declared to belong to the community.

Property acquired in name of the wife during community, presumed to be community property. The husband presumed to administer the wife's paraphernal property. The burden of proof is on those whose interest it is to contest these propositions. They must rebut the presumptions by positive and conclusive proof. Mere declarations will not suffice. They must show that the wife had means and their origin, and the actual investment. C. C. 2402, 2386; 29 Ann. 583; 24 Ann. 591; 38 Ann. 146; 17 Ann. 204; 16 Ann. 145; 20 Ann. 206; 33 Ann. 612; 35 Ann. 530; 39 Ann. 377, 632.

Interest does not run in favor of wife against husband during marriage. 39 Ann. 377.

Property bought partly with wife's money and partly with community funds is community. 39 Ann. 377.

Article 219 Constitution, limits exemptions from seizure, and avoids C. P. '644. *Inclusio unius exclusio est alterius.*

General declarations are not sufficient to prove manual gifts. As to them the proof must be exact, precise and specific.

*J. M. Tucker* and *J. M. B. Tucker* for R. M. Walmsley & Co. and others, Opponents.

---

*Chaplin, Breazeale & Chaplin* for the Insolvent.

---

The opinion of the Court was delivered by

McENERY, J. R. M. Walmsley & Co., J. A. Ducourneau & Son and Mrs. M. Labyche, creditors of the insolvent, J. H. Cosgrove, oppose the voluntary cession made by their debtor on the ground that he has fraudulently concealed and omitted from his schedule certain property legally subject to their demands. The property omitted is described as

thirty-three arpents of land with buildings and improvements thereon upon which he resides, some fifteen head of cattle, one phaeton, one pair of mules, and a lot of furniture and silverware.

This case was once before this court on appeal, and remanded for the purpose of making Mrs. Cosgrove, the wife of the insolvent, a party.

Cosgrove excepted, and his wife, after having been made a party, also excepted, alleging that the immovable property alleged to have been omitted from the schedule is the separate property of Mrs. Cosgrove, and stands in her name by public act duly recorded in the recorder's office of Natchitoches parish, and that the said property was acquired by her in good faith and with her separate and paraphernal funds, long before the claims of opponents were contracted, and that said property has been under her separate control and administration since the date of her purchase and cannot be inquired into collaterally.

In the answers of Mr. and Mrs. Cosgrove a general denial is pleaded and it is specially averred by Cosgrove that the two mares mentioned in the opposition were sold to his attorneys in discharge of their fees before his schedule was filed, and the other mare and phaeton were purchased with Mrs. Cosgrove's paraphernal means and they are her separate property. The two mules, it is alleged, were given by Cosgrove to his wife in exchange for two others that had been bought by her with proceeds of her cotton crop of 1881, and that he has since sold one of them, received in exchange by him, to Winbury, and the other has died.

He denies the ownership of any of the cattle, and avers that the two cows had been given by Jules Messé to his daughter and the other cattle were purchased by Mrs. Cosgrove with her own funds. Mrs. Cosgrove answers that all the property alleged by opponents as belonging to the community existing between her and her husband belongs to her separately and individually and she specially pleads the manner in which she acquired this property.

The exceptions were properly overruled.

The law, Art. 1990 R. C. C., gives to creditors, where there is no cession of goods, and to their representatives where there is one, an action to annul any contract made by their debtor in fraud of their rights.

There is no contract made by the insolvent which it is sought to annul because made in fraud of the creditors' rights. The opponents demand that certain property purchased by Mrs. Cosgrove, the wife, from another party during the existence of the partnership of gains be placed on the schedule as community property.

The property, although in the name of Mrs. Cosgrove, is presumed to

belong to the community of acquets and gains, and this presumption continues until it is proved by conclusive evidence that it is the separate property of the wife. The burden of proof is on the wife to prove that it is her separate property, purchased with her paraphernal funds, of which she had the administration. Although technically in the name of the wife, the ownership of the property was apparently and presumptively in the community. And the creditors, finding the property on the records as belonging to the community, had the undoubted right of proceeding directly against it for the purpose of having it placed upon the schedule of their insolvent debtor. R. C. C. Art. 2402; 15 Ann. 119; 35 Ann. 570; 39 Ann. 380.

Objection was made and overruled to the admission of the testimony of Cosgrove and wife. In remanding this case the Court said:

"Mr. and Mrs. Cosgrove were married in February, 1867, and neither brought any property into the marriage. The community of acquets and gains exists between them, there having been no antenuptial contract providing otherwise nor separation of property since. The presumption of law therefore is that all property now held by either of them belongs to the community.

"To rebut this presumption a number of witnesses and papers were introduced in evidence, and among the former was Mr. Cosgrove, to whose capacity as a witness the opponents objected on the ground that the husband can not be a witness for or against his wife, except when they are joined as plaintiffs or defendants, and have a separate interest. The Court overruled the objection, and permitted the husband to testify for the reason that the wife is not a party to these proceedings, and her rights and interests can not be affected by any judgment to be rendered herein."

Cosgrove, as the pleadings stood before the remanding of the case, was undoubtedly a competent witness in his own behalf, to show that his schedule contained a full statement of the property owned and surrendered by him, and that the property which it was alleged belonged to the community, in fact did not belong to it but to another party, whether to his wife or any one else was not material to him, so far as his insolvent proceedings were concerned. It would, therefore, be an anomalous and strange proceeding for the court to remand the case for her to be made a party thereto, the effect of which would be to destroy material and important evidence in her behalf.

The husband and wife are joined in this suit, one as defendant and the other as plaintiff in the insolvent proceedings. They both have separate and distinct interests, the husband to maintain the integrity of

his schedule; and the wife to prove the ownership of property which she alleges is her separate property. The husband is a competent witness for or against his separate interest, and the wife for or against her separate interest. Because the husband, in the insolvent proceedings, has to state and prove, in order to escape the charge of fraud in omitting property from his schedule, that certain property belongs to his wife, is no valid reason why he should not be a competent witness for his own interest. Mrs. Cosgrove's evidence was in her own favor, touching her separate interest to rebut the presumption that the property belonged to the community, and because the fact was affirmed by her husband that the property was hers, is no valid reason why she is not a competent witness in favor of her interest to prove said fact. It would indeed be a hardship, if the effect of the evidence should determine its admissibility, and the husband and wife should be deprived, on this account, of a legal right to be heard for their respective interests. The law does not intend any such absurd consequences. The question to be determined is whether the place known as Erin Villa belongs to Mrs. Cosgrove as her separate property. The determination of this will in a great measure settle the whole contention.

On the 21st day of October, 1879, Jos. P. Johnson sold or conveyed to Mrs. Julia Cosgrove the Erin Villa place.

The act recites that the price is $830, and declares that this sum is an amount paid to her by her husband in restitution of the sum of $750, with legal interest thereon, being the purchase price of a lot of ground and improvements sold to Boult in August, 1873, by Mrs. Cosgrove, and which was her separate property, and that said sum of $750, for which he made restitution, was used and appropriated by her husband and that no part thereof in any way inured to her benefit, and that she had the exclusive control and administration of the sum given to her by her husband, with which she purchased said property. R. E. Burke donated the property to Mrs. Cosgrove, which she sold to Boult. On this point we think there can be no serious doubt.

Cosgrove, with the one thousand dollars which he gave his wife to replace the amount of her separate property which he had used and spent, could have purchased property, and made a *dation en payment* to her. We see no reason why he could not give her the money in payment of the amount due her and with his consent purchase property with the money, which would have the same status as the property given in payment.

Mrs. Cosgrove bargained for the Erin Villa place during the absence of her husband. It was purchased in his name, but for her, by John-

son, and afterwards conveyed to her on the return of her husband with his consent.

She superintended the building of the house on the place, paid the mechanics, employed the laborers, raised and sold the garden truck, milk and butter, which brought $9 per week. She paid the taxes and she employed the overseer or manager who sold the crops that were raised on the place, and accounted to her for the proceeds. The husband lived on another plantation, known as the Lower place, and visited his wife occasionally — usually on Saturdays. He had no knowledge of what was going on at Erin Villa, and never attempted to interfere with his wife's management. He was, in fact, absent from the parish a greater portion of his time. As against these acts of administration, there are offered in evidence orders upon opponents, who are merchants, for supplies, household and plantation, some in the handwriting of J. H. Cosgrove, and some in that of his wife, and signed by her and who also sometimes signed her husband's name to orders. These various orders so signed can not outweigh the acts of administration so prominently done by Mrs. Cosgrove.

Mrs. Cosgrove accounts for signing the name of her husband to orders by her, by the fact that her husband raised no hay on the Lower place and that he supplied himself from Erin Villa and she charged him with it and paid herself in that manner. Cosgrove says he kept an account of the amounts due his wife.

We conclude that the Erin Villa place is the separate and paraphernal property of Mrs. Cosgrove.

The phaeton was purchased with her money, the proceeds of a portion of the crop of Erin Villa. The two cows and calves belong to Mrs. Cosgrove's daughter, having been given to her by Messé.

The value of the furniture is not enough to place it beyond exemption, and the silver and plated ware was given to Mrs. Cosgrove at various times by relatives and friends and belongs to her.

The ten or fifteen head of cattle, it is proved, were purchased by Mrs. Cosgrove with the proceeds of her crops on the Erin Villa place.

The two mares were sold to Chaplin, Breazeale & Chaplin for attorney's fees for services rendered before filing the schedule in his insolvent proceedings, and the third mare was purchased by Mrs. Cosgrove when the phaeton was purchased, with her separate funds, the proceeds of her separate paraphernal property. The two mules on the Erin Villa place were given to Mrs. Cosgrove in exchange for two others that had been bought by her with the proceeds of the sale of her crop on the Erin Villa place. All these matters between Cosgrove and wife were at a

time when he was in good circumstances and he owed no debts, and there was no reason for concealment of his property.

The demand in the oppositions is that the Erin Villa place, with improvements thereon, be placed on the schedule. It is claimed in argument, and there is proof in the record that the improvements were put on the place, in part at least, with community funds.

To determine this question would necessarily require a settlement of the partnership of acquets and gains between the husband and the wife, and this would require also a dissolution of the community, and a separation of property.

Creditors cannot require the separation of property between husband and wife. R. C. C. 1991.

The reason of the law is obvious. The community can only be dissolved by the husband and the wife. It continues at their will, and at its dissolution the wife may be a creditor of the community for the replacing of her dotal and paraphernal property, and for the administration of her paraphernal effects. R. C. C. 2376, 2390.

And the wife may exonorate herself from the debts of the community of acquets and gains by renouncing the same. R. C. C. 2441.

We therefore conclude that Mrs. Julia Cosgrove, wife of the insolvent J. H. Cosgrove, is the owner in her own right of the property described in the petition of opponents and that said insolvent was guilty of no fraud in omitting same from his schedule. It is, therefore, ordered, adjudged and decreed that the judgment appealed from be avoided, and reversed, and that the opposition be dismissed at opponents' costs.

---

Associate Justice Watkins, being recused in this case, takes no part in this opinion.