## COX v. CALDWELL.
### No. 6111.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

**168**

H. W. Ayres, of Jonesboro, for appellant.

W. T. Holloway, of Jonesboro, for appellee.

TALIAFERRO, Judge.

On April 2, 1937, Mrs. Kate T. Campbell and her husband, W. B. Campbell, specially mortgaged to Mrs. Gladys Caldwell, to secure payment of a declared indebtedness of six hundred seventy ($670) dollars, evidenced by their note, the south one-half (S ½) of a small lot of land measuring two hundred twenty-one (221) feet north and south by one hundred seventy-eight (178) feet east and west in the northeast one-quarter (NE¼) of the northwest one-quarter (NW ¼), Sec. thirty-one (31), Twp. fifteen north (15 N.), range three west (3 W) in Jackson Parish. Hereinafter this property will be referred to as the lot. The mortgage note was pledged to the Jackson Parish Bank of Jonesboro by Mrs. Caldwell, as collateral security to her open notes. The separate and paraphernal character of this mortgage note, as an asset of Mrs. Caldwell, or whether it belongs to the community of acquets and gains between her and her husband are the embattled questions herein.

On January 20, 1931, judgment for ninety-six and $^{57}/_{100}$ ($96.57) dollars and interest was rendered by the district court of Jackson Parish against D. E. Caldwell, husband of Mrs. Gladys Caldwell, in favor of Jonesboro Hardware & Furniture Company, Inc., which was thereafter assigned to J. E. Cox, plaintiff herein. Cox caused execution to issue on the judgment and sued out garnishment process. The said bank and Mrs. Campbell were cited and served as garnishees. The customary formal interrogatories were propounded to each. Seizure of the mortgage note was made in the manner and form usual in such a case.

The bank admits holding the mortgage note in pledge to Mrs. Caldwell's open notes on which there is (or was) a balance due of fifty-one ($51) dollars; that four hundred sixty ($460) dollars had been paid on the mortgage note. It disclaimed knowledge as to whether the mortgage note is the separate and paraphernal property of Mrs. Caldwell or an asset of the community of acquets and gains existing between her and her husband.

Mrs. Campbell likewise denies knowledge of the ownership of said mortgage note and admits that she owes thereon approximately two hundred ($200.00) dollars, the exact balance being a matter of record in said bank; and avers that she is able and willing to pay said balance (after the bank is paid the amount due it) to the person or persons adjudged to be entitled to the same, provided said judgment, if decreed an encumbrance on said lot, is canceled from the records.

Plaintiff moved to traverse the answers of the garnishees on the ground that the same, although unintentionally so, were false and evasive. The community character of the mortgage note was affirmatively alleged and its liability for payment of the judgment against Caldwell asserted. The various transfers and instruments of record, affecting said lot, to and from Mrs. Caldwell, employed as a basis for said conclusions, are specifically enumerated and described. We omit further discussion of said instruments and transfers for the immediate present as they will be hereinafter discussed in detail and their effect upon the parties' contentions, respectively, determined.

Mrs. Gladys Caldwell filed intervention and third opposition wherein she set up ownership of the mortgage note of six hundred seventy ($670) dollars, subject to the pledge to the bank and payments thereon made. She alleged that said mortgage note was her separate and paraphernal property which was received by her from sale of certain real estate in Jackson Parish, not described. She also denies that the note is an asset of the community of acquets and gains between her and her husband, and, therefore, avers that it may not be subjected to the payment of his or the community's obligations. She prayed that her ownership of the mortgage note be recognized; that the seizure thereof be set aside and that the garnishment proceedings

be dismissed. In the alternative, should it be held that "the property was not purchased as alleged herein, that the same be held to be a donation from her father, R. L. Hardy, and as such, the proceeds from the sale of the property, together with the note, be decreed and hereby exempted from seizure on the judgment out of which this suit arose."

Plaintiff, the sheriff, the bank and Mrs. Campbell were made parties to the intervention and third opposition.

Plaintiff excepted in limine to the petition of intervention as disclosing neither a cause nor a right of action, and then answered. The exception was not passed on specifically. It is urged here, but as the case is with plaintiff on the merits, we omit passing on it. The answer is a categorical denial of all of the allegations advanced by intervenor to support her alleged separate ownership of the mortgage note, and, in addition, to negative said asserted ownership, and to sustain the position that the note is a community asset, plaintiff sets up and pleads the transfers and instruments alleged upon in the rule to traverse.

Neither the bank, Mrs. Campbell nor the sheriff answered the intervention.

The answers of the bank and of Mrs. Campbell to the rule to traverse are in substance the same as given by them to the interrogatories propounded to them as garnishees.

Mrs. Caldwell's answer to the rule to traverse is a general denial, coupled with a reiteration of her contention that the mortgage note belongs to her individually as a result and effect of the same transfers and instruments plaintiff claims establish the community character thereof.

The rule to traverse and the intervention were tried together. Plaintiff's demands were rejected and his suit dismissed. The mortgage note was decreed to be the separate and paraphernal property of Mrs. Caldwell and the garnishees were relieved from further answering. Plaintiff prosecutes appeal.

The transfers and other instruments of record upon which plaintiff and Mrs. Caldwell depend, in whole or part, to succeed herein, are as follows:

1. On May 28, 1925, Mrs. Caldwell and her father, R. L. Hardy, executed a notarial act of exchange whereby she released and transferred unto him her entire interest in her deceased mother's estate in consideration of the transfer to her of the above described lot.

2. On January 29, 1930, Mrs. Caldwell sold said lot to her father for six hundred ($600) dollars cash.

3. On February 17, 1930, R. L. Hardy reconveyed, by act under private signature, the property to Mrs. Caldwell for the expressed consideration of two hundred ($200) dollars cash and: " * * * further consideration of the love and affection that I have for my daughter, Mrs. Gladys (Hardy) Caldwell, wishing to provide a homestead for her and her children, the same not ever to be mortgaged in any way that would deprive her and her heirs to forever claim as homestead for themselves."

This instrument was not filed for registry until May 16, 1935.

4. On February 8, 1937, R. L. Hardy executed unto Mrs. Caldwell an instrument, confirmatory in character, wherein reference is made to the reconveyance to Mrs. Caldwell of February 17, 1930, with emphasis on the consideration expressed therein, which concludes as follows, to-wit: "Now therefore, for the consideration of the sum of Two Hundred and no/100 ($200.00) Dollars, receipt of which was then duly acknowledged, and also now acknowledged, and other good, sufficient, and valid consideration, the receipt of which is also hereby acknowledged, do hereby and by these presents bargain, sell, convey and deliver, with full warranty of title, unto Mrs. Gladys Caldwell, her heirs and assigns, all my rights, claims and interest of any kind or sort, whatsoever, in and to the foregoing described land, and especially do I release, relinquish, transfer, and deliver unto Mrs. Gladys Caldwell, her heirs and assigns, any and all claims of any kind or sort which I have or may have under the stipulations of the former deed hereinabove mentioned."

It was the evident purpose of Hardy in executing this instrument to purge the former conveyance by him to Mrs. Caldwell of the declaration therein that a part of the consideration for its execution, was "love and affection." However, as the former act was under private signature, it was wholly impotent as a donation inter vivos. Civil Code, Art. 1536; Baker v. Baker, 125 La. 969, 52 So. 115.

5. On April 1, 1937, by notarial act, Mrs. Caldwell sold and conveyed said

lot with improvements thereon to Mrs. Kate T. Campbell for two thousand ($2,000) dollars cash.

6. On March 30, 1939, D. E. Caldwell signed an instrument to Mrs. Campbell wherein he declared that "for a good, valid and sufficient consideration, receipt of which is hereby acknowledged, has bargained and sold and does by these presents quit claim, release, transfer and deliver" said lot of land with improvement thereon. The consideration of this instrument is amplified by the following clause therein, to-wit: "It being agreed and understood that the consideration for which this sale is made is the same consideration recited in that certain deed dated April 1, 1937, given by Mrs. Gladys Caldwell, wife of vendor, to Mrs. Kate T. Campbell, as recorded in Conveyance Book '51' folio 80 of the records of Jackson Parish, La., and this deed is made to convey any interest, community, or otherwise belonging to vendor to this vendee."

It is quite evident from the contents of this instrument that the grantor therein was of the opinion or belief that the title to the lot formerly held by his wife was impressed with the qualities and attributes needful to constitute it a community asset.

All property acquired by either spouse during the existence of the marriage presumably falls into and becomes an asset of the community of acquets and gains between them, if such exists. Art. 2402 of the Civil Code. Murff v. Neal et al., La. App., 162 So. 245; Schwab v. Hava et ux., 154 La. 922, 98 So. 420; Houghton v. Hall et al., 177 La. 237, 148 So. 37.

It is said in the latter case, on page 244 of 177 La. on page 39 of 148 So.:

"This presumption is not overcome by the declaration of the spouses in a deed to the wife that the latter is purchasing with her own separate and paraphernal funds, under her separate administration. Shaw v. Hill, 20 La.Ann. 531, 96 Am.Dec. 420; Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31."

"Every marriage contracted in this State, superinduces of right partnership or community of acquets and gains, if there be no stipulation to the contrary." Art. 2399 of the Civil Code.

The burden of overcoming the above referred to presumption rests upon the person alleging the separate and/or paraphernal character of the particular property. Schwab v. Hava et ux., supra; Houghton v. Hall et al., supra; Cosgrove v. His Creditors, 41 La.Ann. 274, 6 So. 585; Huntington, Adm'r v. Legros, 18 La.Ann. 126.

It is also held in Houghton v. Hall et al., that: "The wife, and those claiming through or from her, to overcome the presumption in favor of the community, must establish three crucial facts, namely: (1) The paraphernality of the funds; (2) the administration thereof separately and apart from her husband; and (3) investment by her. Stauffer, Macready & Co. v. Morgan, 39 La.Ann. 632, 2 So. 98."

By the exchange between Mrs. Caldwell and her father, the lot in question became her separate property, because it was conveyed to her in return for the transfer of her interest in her deceased mother's estate unto her father. But she was divested of title thereto by the sale to her father on January 29, 1930. To again become the owner of the property, to the exclusion of the community, it would have been necessary to purchase same as an investment with her own separate and paraphernal funds, at no time under the administration of her husband. The record does not disclose that she said so.

The deed by Hardy to Mrs. Caldwell of date February 17, 1930, recites a cash price of two hundred ($200) dollars and the additional motive for its execution is said to be "love and affection" for the grantee, his daughter; but this additional and supplemental consideration is, in effect, completely expunged from the instrument by the declaration of Hardy in the other instrument executed by him to Mrs. Caldwell on February 8, 1937. However, this ceases to be important since the first instrument is ineffective as a donation for lack of form.

There can be no doubt about this acquisition by Mrs. Caldwell when these instruments are considered together, being presumptively on behalf of the community. When construed together there is absent any declaration tending to negative this presumption. Such a stipulation, however, as is said in Houghton v. Hall et al., supra, would not have been sufficient to overcome the strong presumption which automatically arose on execution of the instruments.

Mrs. Caldwell does not allege, nor did she make effort to prove, that the price of

this last sale from her father was paid from paraphernal funds which she had administered separately and apart from her husband, nor that the purchase was an investment of such funds. To successfully rebut the presumption of community this was indispensable.

Therefore, if we assume as a fact (and we would have to so do because of absence of any proof to sustain it) that the six hundred seventy ($670) dollar mortgage note represented so much of the purchase price of the sale to Mrs. Campbell, in view of what we have heretofore said, the note fell into the community of acquets and gains because the property sold was a community asset.

■ In addition to the foregoing insurmountable barriers to Mrs. Caldwell's success herein, there is another equally as formidable, and this is true, even though it be conceded that the lot was her separate property when sold to Mrs. Campbell.

The six hundred seventy ($670) dollar note and the mortgage given to secure it were executed the day after signing of the deed to Mrs. Campbell. There is no recital in the act, nor testimony in the record, to prove or even indicate that the note was given to evidence part of the purchase price of the sale. So far as the record reflects, the transaction was separate and independent of the sale. The note presumptively became a community asset. To disprove this presumption, the same allegations and proof were necessary as would be in the case of the acquisition of realty. This was not done.

■ The fact that the note is made payable to the wife does no transform what would otherwise be a community asset to separate property of the wife. Beigel v. Lange et ux., 19 La.Ann. 112; Mackenroth v. Pelke, 171 La. 842, 132 So. 365.

For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed; and there is judgment in favor of plaintiff, J. E. Cox, and against Mrs. Gladys Caldwell, recognizing and decreeing the mortgage note involved in this cause to belong to the community of acquets and gains between her and her husband, D. E. Caldwell, and as such subject to seizure and sale to satisfy the judgment under which seized, subject, however, to the rights of the Jackson Parish Bank as pledgee; the garnishment process issued and served herein and the seizure of said mortgage note in connection therewith, are maintained. All costs of this litigation shall be paid by and are hereby assessed against Mrs. Gladys Caldwell.