MOISE, Justice.
This matter is a consolidation of the •executory proceedings filed by Arthur C. Dale, Jr. v. Mrs. Mary Franek, widow of Arthur J. Brandin, to recover the sum •of $5,000, plus interest, etc., the alleged amount due on a certain promissory note •executed by Arthur J. Brandin, and secured by mortgage on certain alleged community property, and of the Succession of Mrs. Mary Franek Brandin.
After trial on the merits, judgment was rendered recognizing the note sued on and given by Arthur J. Brandin, on the property involved, which stood in the name of his wife (Mrs. Mary Franek Brandin) as a binding obligation of the deceased husband, the judge having concluded that the property was community property and that the mortgage with which the note was identified, was good as to Brandin’s alleged half of the property.
From this judgment, the two heirs of Mrs. Mary Franek Brandin prosecute this appeal.
After the rendition of the judgment, the litigants, through their attorneys, by stipulation, agreed that:
1. The judgment rendered shall be considered as a judgment rendered on the merits, finally dismissing the petition for injunction;
2. That the- appeal shall not arrest the execution of the writ of executory process; and
3. That the sheriff be permitted to sell the entire property under said writ, according to law, with the understanding that the proceeds of the sale shall be deposited in the registry of the court, subject to further orders of the court.
The parties litigant having, therefore, acquiesced in the sale of the property involved, the issue for our determination is the ownership of the proceeds of the sheriff’s sale.
Plaintiff Dale, the owner of the mortgage note given by Brandin, relies on the fact that the property having been acquired during the marriage, is presumed to be community, but the law is that such is a rebuttable presumption. LSA-C.C. Art. 2402; Succession of McMahon, 176 La. 63, 145 So. 269.
The two forced heirs offered rebuttal proof conclusive that the property is sep *752 arate,'-and therefore being in the wife’s name,-the .husband had-no right to mortgage or sell it without her consent, which is usually manifested by her signature.
Dale offered ■ no witness but presented certain documentary evidence. He did not testify to the .contention that the mortgage was one given through compulsion, because of a pending charge made against Brandin in the Criminal District Court for having obtained money from Dale’s mother and Dale under" false pretenses. The info rmatibri’in the record, its date, the amount of the mortgage, as well as the date of execution of, the. mortgage corroborate the allegations, of Mrs.. Brandin. .¡Neither she nor Mir. Brandin could testify. They were both dead at .the .time of the trial. To restrain executory . process, Mrs. Brandin spoke only through the sworn allegations of her petition for injunction, wherein it is asserted that the note is a fraud and was confected between her husband and Dale alone, both of whom knew that the property was her separate property; and that Mrs. Brandin, as the sole owner of the property, was not- a-party -to the -pretended mortgage, which was fraudulently obtained. Mrs. Brandin' alleged also that her husband was in a state' of duress by a criminal prosecution pending (126,395, Criminal District Court) ; that Arthur J. Brandin, in desperation and fear and to avoid criminal prosecution fraudulently consorted with Arthur G. Dale, Jr.,- in executing the pretended note and mortgage; that no money changed hands when the act was passed.; that the instrument, was confected in a haphazard and hurried manner; that no certificates — mortgage, conveyance or tax research — -were obtained, and the Notary was held free of all responsibility for such nonproduction; that no notice was given by the contracting parties tl\at the titie was in the name of. Mrs. Brandin; and that the note was given by Brandin to secure- á prior indebtedness claimed by Arthur C. Dale, Jr., which indebtedness was the .subject of the prosecution instituted.
An examination of the act of sale and the criminal information substantiates these allegations of the deceased’s widow. She further alleged that the property never formed a part of the community but was acquired with her separate and paraphernal funds, under her seperate administration and control.
Plaintiff Dale did not take the stand.
Conceding for the sake of argument that the property stood in the name of the wife and was community property, the husband had no right to mortgage or sell it without the written consent or authority of his wife. We do not need the thunder of Sinai or the writing on a table of stone to elucidate the commandment of our Code:
* * Common property is that which is acquired by the husband and wife during marriage, in any manner *754 different from that above declared. But when the title to community property stands in the name of the wife, it cannot he mortgaged or sold by the husband without her written authority or consent.” (Italics mine.) Art. 2334, LSA-C.C.'
The above article applies . to community property, but if the property is separate, the magnitude of the commandment infringed upon must be compounded.
In this instance, has the presumption of community been rebutted? • '•
We have the following evidential facts:
The property is in the wife’s name. The act of sale recites: “here present, accepting and purchasing * * * for herself, heirs * * The stated consideration is $2,350, of which $150 was in cash. A reading of this instrument furnishes the best evidence of the conclusiveness as to its contents. The keeping of the homestead book in her possession, the payment of the homestead dues by her and her children also show that the property was under the wife’s separate administration and control. The record also discloses that the two children gave their mother, Mrs. Brandin, money, and that Brandin’s son, her stepchild, paid board and bought household provisions. The testimony of Bran-din’s son is, as follows:
“Q. You know whether or not Arthur Brandin ever paid anything on it (the home) ? A. No, sir, / am positive that he could not pay anything on it.
“The Court: Q. Why? A. Because he has never worked, your Hon- or. I don’t remember him ever having a job. * * *
' “Q. Where did he get his money to live on? A. I don’t know: I never saw any of it. I used to help support the house myself.
“Q. Did anybody else help to support the house? A. Yes, George and Isabel.” (Italics mine.)
Mrs. M. J. Schoppel, a first cousin to the late Brandin, when propounded the question as to whether she knew what Brandin did for a living, answered:
“No, sir, I have never known him to be employed by any firm or anything that way, and several occasions when money was borrowed my mother would ask him how about getting it back, or something.
“The Court:
“Q. Was that done in your presence? Were you present when your mother spoke to him? A. Yes, I was. And she always used to ask him: Well, why not borrow some money on your house, and we were always under the impression that the home never belong to him. He has stated that several times, that it belonged to his wife.”
“Q. He stated that in ■ your presence? A. Yes, that he did.” -
*756 On 'cross-examination, when testifying about Brandin borrowing money from her mother and her mother inquiring why Brandin did not borrow it on his home, Mrs. Schoppel was asked:
“ * * * what did he tell her ?
. “Mrs. Schoppel replied: That the house was not his to be borrowed on; he had no equity in the home; that it wasn’t his — like if I tried to borrow money on your home, which I wouldn’t have anything to do with.” (Italics mine.)
The record reflects further proof that-during his lifetime Brandin borrowed heavily and that he admitted to others on several occasions that the property was not his, that he had no source of income whatsoever. Counsel for defendant heirs stated that if Dr. Leidenheimer, Mr. Charles Ciaccio, Mr. Sidney Massicot and Mr. Harold Westholz had testified, their statements would have borne out the fact that Mr: Brandin “had no source of income whatsoever, and that he was an oil speculator and that they knew of no occasion when he had earned' any money from his oil speculations; that they knew of no jobs which he had.”
The foregoing facts are amplified by the statement of the court:
“ * * * my recollection is that no witness has testified up to this time that Mr. Brandin made the statement to them that he had no source of income, and therefore, at my dictation the stipulation is changed so as to provide that these witnesses would testify that they knew of no source of income by Bran-din.
“Mr. Bryan: I think that is fair.
“Mr. Schiílin: Yes, sir.
“The Court: With that, gentlemen, we shall consider the above as a stipulation and will avoid the necessity of those witnesses being placed on the stand.”
In Succession of McMahon, 176 La. 63, 145 So. 269, it is stated:
“The presumption is that all property acquired during the existence of the community belongs to the community, although the purchase be in the name of the wife only. [LSA] Civ.Code, arts. 2402, 2405. To rebut this presumption, the wife must show the legal certainty: First, that the funds con■stituting the price paid for the property, were her paraphernal funds; secondly, that they were administered by her; and, thirdly, that they were invested by her. * * * ” See Bruyninckx v. Woodward, 217 La. 736, 47 So.2d 478; Cameron v. Rowland, 215 La. 177, 40 So.2d 1.
In Krokroskia v. Martin, La.App., 61 So.2d 630, 632 the court said:
“Where the property bought during the community is taken in the name of the wife even though there is no declaration in the deed to the effect that *758 'the property is bought with separate funds and as her separate and paraphernal property, the wife may overcome with presumption that the property is community at any time after-wards by showing, even by parol evidence, if it be true, that the purchase was made with her separate and paraphernal funds under her separate control and as her separate and paraphernal property.”
In Succession of Farley, 205 La. 972, 18 So.2d 586, 589, the Court said:
“ * * * If she had paid her share of the purchase price with her separate or paraphernal funds, under her separate control or administration, she would be allowed now to prove that fact by parol evidence, and thereby to prove that the three daughters, heirs of her husband, acquired no interest in the property which was bought in her name.
“ * * * When the title, in such an instance, is taken in the name of the husband, without a declaration in the deed that it is bought with his separate funds and as his separate property, the presumption that the title is vested in the community is juris et de jure, alnd thereafter cannot be contradicted by him to the prejudice of his wife or of her heirs. But it is not so with regard to a purchase made in the name of the wife, by a deed in which there is no declaration as to whether the property is bought with her separate funds under her separate control, and as her separate and paraphernal property. In such a case she may at any time afterwards prove, even by parol evidence, if it be true, that the purchase was made with her separate or paraphernal funds, under her sepa ■ rate control, and as her separate or paraphernal property. * * * ” (Italics mine.) See, also, Succession of Le Jeune, 221 La. 437, 59 So.2d 446.
We do not need the three dimension MGM’s to see the picture in this record. The heirs of Mrs. Brandin have successfully rebutted the presumption of community. The property is the separate property of Mrs. Mary Franek Brandin. The proceeds of the sale deposited in the registry of the Civil District Court are owned by the heirs of the Succession of Mrs. Bran-din, and these proceeds are subject to further orders of the district court.
For these reasons, the judgment appealed from is annulled, reversed and set aside, and the case' is remanded to the district court, to be acted upon in accordance with the views herein expressed, and, in conformity with the law; plaintiff, Arthur C. Dale, Jr., to pay all costs of this appeal.