JOHNSON, Judge.
In this suit plaintiff prays that lots 791, 793, 795, 797 and 799 in Metairie Court, Jefferson Parish, he decreed to belong to him *743 individually and to his separate and para-phernal estate. The plaintiff and defendant formerly were husband and wife but they were divorced by judgment on June 11, 1959. After trial, the Civil District Court for the Parish of Orleans rendered judgment herein on July 5, 1961, in favor of the defendant and against plaintiff, decreeing that said immovable property was acquired while the parties were married and that it belongs to the community of acquets and gains then existing between said defendant, Mrs. Lucille Marguerite Petrie, divorced wife, by first marriage, of Dominick A. Lo-cantro, and now wife, by second marriage, of Isidore Walter Falco, and the said plaintiff, Dominick A. Locantro, and that said defendant is declared to be the owner of the undivided one-half interest of the whole, and that plaintiff is the owner of an undivided one-half interest of the whole. The plaintiff has appealed.
The petition and record show that plaintiff and defendant were married on September 23, 1941. Plaintiff’s father, John Lo-cantro, died in 1929. His survivors were his widow, Rosina Favalora Locantro, and six children; Joseph Locantro, Rosa Lo-cantro Chetta, Dominick Locantro (plaintiff herein). Moreno Locantro all of full age, and two minors, Jeannette Locantro and John Locantro, Jr.
The father’s net estate consisted of twenty-eight lots in Metairie Court. His succession was opened and judgment was rendered on May 29, 1929, recognizing the above named survivors and sending them into possession of his estate in proportions of an undivided one-half to the surviving widow in community, and an undivided one-twelfth to each of said children.
The four major heirs, on July 23, 1929, sold, conveyed and delivered their undivided interest in the real estate to their mother by authentic act, under all lawful warranties, before Julius H. Wiener, Notary Public and for the recited consideration of $6,000.00 cash. In 1930 the taxes were not paid and the property was adjudicated to the state at tax sale. In 1952 the property was redeemed from the state in the name of Rosina Favalora Locantro.
The daughter, Jeannette, who was a minor in 1929, became of age and married to Fortune Mannino. On July 29, 1952, the mother, Rosina Favalora Locantro, and the daughter, Jeannette Locantro Mannino, sold, conveyed and delivered the twenty-eight lots in Metairie Court to John Locan-tro, Jr., who, in the meantime, had become of age. This sale was made by notarial deed under all lawful warranties for the recited consideration of $5,000.00 cash. In this deed, Moreno, Joseph and Dominick appear to quitclaim any right, title or interest they have or may have in the said twenty-eight lots. Following the description in the deed, acquisition of the property by the vendors is recited as follows: “Being the same property acquired by Mrs. Rosina Fa-valora Locantro, et al. by judgment in the Succession of John Locantro, registered in C.O.B. 101 folio 505, Jefferson Parish; further acquired by act before Julius H. Wiener, dated July 23, 1929, registered in C.O.B. 102, folio 484, Jefferson Parish.” This deed to John Locantro, Jr., also contains the declaration “* * * that the consideration hereinabove mentioned is his separate funds and that it is his intention to acquire the hereinabove described property for the benefit of his separate estate.” John’s wife also appeared with her husband to acknowledge that said property is purchased with her husband’s separate and paraphernal funds.
On October 4, 1954, John Locantro, Jr., sold, conveyed and delivered five of the twenty-eight lots in Metairie Court to Anthony Cimo, by deed in authentic form, under all lawful warranties, before Dudley A. Philips, Jr., a Notary Public, for the recited consideration of $1,000.00 cash.
On October 25, 1954, John Locantro, Jr., sold, conveyed and delivered five of the twenty-eight lots to Jeannette Locantro Mannino by deed under all lawful warranties, before Dudley A. Philips, Jr., a No *744 tary Public, for the recited consideration of $1,000.00 cash. Rosina, Joseph, Moreno and Dominick, intervened in this deed to quitclaim any and all their right, title and interest which they have or may have in the five acres sold to Jeannette.
On October 25, 1954, John Locantro, Jr., sold, conveyed and delivered five of the twenty-eight lots to Moreno Locantro, under all lawful warranties, before Dudley A. Philips, Jr., a Notary Public for the recited consideration of $1,000.00 cash. Rosina, Jeannette, Joseph and Dominick intervened in this deed to quitclaim any and all their right, title and interest which they have or may have in the five lots sold to Moreno.
On October 25, 1954, John Locantro, Jr., sold, conveyed and delivered to Dominick Locantro five of the twenty-eight lots under all lawful warranties, by deed before Dudley A. Philips, Jr., a Notary Public, for the recited consideration of $1,000.00 cash. Rosina, Jeannette, Moreno and Joseph intervened in this deed to quitclaim any and all their right, title and interest which they have or may have in the five lots sold to Dominick. This deed does not contain any declaration that Dominick was acquiring the property with his separate funds for the benefit of his separate and paraphernal estate.
In each of the four deeds next above referred to, after the description of the particular five lots conveyed, there is added this paragraph: “Being part of the same property acquired by Dr. John Locantro, Jr., from Mrs. Rosina Favalora Locantro et al. by act before Dudley A. Philips, Jr., Notary Public, under date of July 29th, 1952, registered in C.O.B. 323, folio 626 in the Parish of Jefferson.”
Plaintiff’s petition alleges that when the four major children conveyed the succession property to their mother in 1929, they executed what they regarded as an essential step in the confection to an eventual partition among all of the coheirs when the minors would reach their majority; that the transfer was not a sale and purchase; that notwithstanding the recited consideration of $6,000.00 there was no money exchanged, and the figure was merely representative of their proportionate succession interest in the said twenty-eight lots. Plaintiff alleges further that when the mother and sister, Jeannette, sold the twenty-eight lots to John Locantro, Jr., that transfer was just another step looking toward a partition of the property; that no money was exchanged, and the transfer was not a sale and purchase transaction. The petition alleges that when, on October 25, 1954, plaintiff, his brothers and sister appeared before a Notary to convey to each other five of the twenty-eight lots, the said transfers were made to complete the partition to each heir, the said lots being of equal dimensions and value; that as in the other acts referred to, the recited consideration of $1,-000.00 as paid by each of the co-owners was not paid at all and no cash was exchanged, but this merely constituted the method employed to partition the property; the money mentioned was only to represent their proportionate interests in the succession, and the acquisition of the five lots by Dominick, while the marriage between him and the defendant was undissolved and a community of acquets and gains technically existed, there was created a rebuttable presumption that the said property formed a part of the community estate, which “may be a cloud on petitioner’s title which would preclude him from the full use, benefit and enjoyment thereof.”
It will be noted that title to eight of the twenty-eight lots remains in John Locantro, Jr., while Moreno, Jeannette and Dominick only got five lots each. These parties attempt to explain this by saying that a canal runs through the property, which canal was thought to be about equal to three lots in area, the location of which was not known and until they make a definite determination as to which one of them would lose about three lots in the canal they would leave the title of the three lots in John’s name and then the one who lost three lots by the canal would get these three extra *745 lots. There is no mention of this in any of the deeds. No consideration seems to have been given as to what would be done if the canal traverses the lots of more than one of the five lot tracts, or in the event the canal actually is more or less than three lots in area.
It is further explained that the reason five lots were not transferred to Joseph Lo-cantro was that he had some judgments against him and he did not want to take title in his own name. The testimony is to the effect that Joseph wanted John Locan-tro, Jr., to hold title to Joseph’s five lots until he found a buyer for them; that some time later he did sell them to Anthony Cimo and then John Locantro, Jr., conveyed the five lots intended for Joseph to Cimo, who, it is said, actually paid the recited consideration of $1,000.00 and John endorsed the check to Joseph. Evidently, they had forgotten that this sale to Cimo was made on October 4 and the so-called partition amongst the others was not made until October 25, 1954. It must also be remembered that John Locantro, Jr., so far as the face of the record is concerned, had absolute title to all the twenty-eight lots and could have disposed of them to anybody. Cimo was no relation to any member of the family. He was a complete outsider.
The mother, Rosina, was living but she got nothing, if these deeds were not sales and purchases. She did not testify. Moreno, Joseph and Dominick explained that in 1929, when the four major children conveyed the succession property to their mother, they wanted their mother to have everything. When they sought to divide the property she got nothing.
Another interesting feature is the one-twelfth undivided interest of Rosa Locan-tro Chetta. She died in about 1941, leaving several children. They seem to have forgotten her children completely. If the conveyance to the mother in 1929 was a simulation, as they all now declare, it no more divested Rosa of her inheritance than it did the others. Moreno is the only one who even mentions Rosa and he testified that he did not know what became of the five lots for Rosa.
John Locantro, Jr., testified that they all agreed that all of the lots would be put in his name in 1952 and later they could do whatever they saw fit with them. When the mother and sister, Jeannette, sold all of the lots to him, he thought it was a donation and he was sole owner of the lots because he did not pay the price. But later in his testimony he said it was not a donation. He acknowledged that this transaction did not constitute a complete partition. The contention of counsel for plaintiff that the five lots conveyed to plaintiff belonged entirely in fee to plaintiff’s separate estate, as an inheritance, is on the theory that “Whatever may be the form of the act, every first settlement between heirs or partners, by which a state of indivisión is terminated, is in substance a partition.” Trippet v. Jett, 3 Rob. 313; Tyson v. Spearman, 190 La. 871, 183 So. 201; Stone v. Jefferson, 196 La. 1057, 200 So. 461; Ortego v. Morein, 212 La. 774, 33 So.2d 516; LSA-C.C. art. 1293.
In this case, we understand the law to be, that the form of the acts employed to accomplish a settlement of partition is not sacramental; provided that there is a complete and accurate dividing of all of the twenty-eight lots amongst all of the survivors of John Locantro and the descendants of Rosa, who died after her father, leaving children, so as to effectively and finally terminate the state of ownership in indivisión. This was not done and it is not a first settlement or partition. If the deeds were simulations, in that no money was actually paid, as they now contend, then the mother’s undivided one-half interest was still in esse at the time. She did appear in all of the deeds to quitclaim her interest, except the one to Anthony Cimo, evidently without consideration. We understand that the mother has since died. Therefore, her undivided interest in the five lots conveyed to Cimo would be inherited by her children *746 and the legal representatives of her deceased daughter. Certainly the surviving heirs of Rosa would still own a share in all of the twenty-eight lots, including those conveyed to Cimo and to Dominick. Assuming that the mother did effectively quitclaim her interest in the twenty-three lots, which went to Moreno, Dominick, Jeannette and John, none of them would be entitled to a full five lots and certainly John would not be entitled to eight lots. We do not hold that it is necessary that each heir receive exactly a fractional proportion determined by a mathematical division of the whole, but we do hold that should any of the heirs take more or less than one share, then the deed should recite strictly and accurately how the difference is accounted for, by receiving or paying an amount equal to that difference, as was done in the case of Ortego v. Morein, 33 So.2d 516.
The notarial acts, when the four major children conveyed their undivided interest to their mother in 1929, when the mother and the daughter Jeannette, conveyed all of the twenty-eight lots to John Locantro, Jr., in 1952 and all the acts executed by John Locantro, Jr., in 1954, were simple deeds of conveyance on printed forms, containing all the sacramental words and considerations of sales and purchases. Counsel for defendant timely objected to the admission of oral testimony in the attempt to prove that the deeds in 1929 and 1952 were not cash sales. In the case of Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441, the Supreme Court quoted from its decision in Loranger v. Citizens’ Nat. Bank, 162 La. 1054, 111 So. 418, as follows:
“ ‘To prove by parol evidence a true and sufficient consideration, in order to sustain the contract made between the parties, is always permissible, where the rights of third parties are not affected thereby. * * * But to resort to such evidence for the purpose of contradicting or varying the contract entered into, in order to substitute in its place a contract of a dissimilar nature, is plainly reprobated by the textual provisions of our Code.’ — citing R.C. C. arts. 1900, 2276.”
See also Drewett v. Carnahan, 183 So. 103 (La. Court of App., Second Circuit. Writs denied).
If we should exclude the oral testimony and enforce the deeds as written, then the conveyance in 1929, in which Rosa was a vendor, took her out of the picture as an heir, and her children would have no interest at all. The deeds in that event do not accomplish a true partition to terminate completely the joint ownership of the remaining five heirs. Each one would be entitled to take more than five of the twenty-eight lots, and Joseph would still have a fractional interest in twenty-three lots.
Having established that the various deeds did not constitute a first settlement or partition of the respective interests of the heirs in the twenty-eight lots, we come to the final and very important consideration of the ownership status of the five lots acquired by purchase for $1,000.00 by plaintiff during the existence of the marriage community between him and defendant. In order to be able to prove that his ownership of those lots did not fall into the community, the deed to Dominick must contain the sacramental double declaration that the property is purchased with his separate and paraphernal funds and the property is to become and remain his separate and para-phernal estate. Plaintiff’s deed does not contain any such provision. No amount of testimony can supply that omission from a deed to the husband.
In Succession of Chapman, 225 La. 641, 73 So.2d 789, 790, decedent, Chapman, before his death, and his brother-in-law, Wilson, were co-owners of several tracts of land. Chapman was an interdict. His curatrix obtained a judgment ordering a partition of the property. Part of the land was bid in on behalf of Chapman and the remainder went to Wilson at the sale. There was some contention that the owners were in partnership and the land which *747 went to each is representative of the partnership interest rather than a sale. The deed conveying Chapman’s portion to him did not contain any stipulation to that effect and did not contain any declaration that the title would belong to Chapman’s separate estate. After Chapman’s death, his widow claimed an undivided one-half interest in the property as the surviving spouse in community. Chapman’s heirs resisted the claim and sought to establish that the whole of the property was acquired by Chapman as his share of the partnership, which share was separate property, and, therefore, the transaction was nothing more than a transfer of separate partnership property to his individual and separate estate. The Court said:
“The presumption in favor of the community is juris et de jure. When a married man buys property in his name without stipulating that it is bought with his separate funds and for his separate use the presumption in favor of the community is juris et de jure. Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Slaton v. King, 214 La. 89, 36 So. 2d 648; Lewis v. Clay, 221 La. 663, 60 So.2d 78.”
In Coney v. Coney, 220 La. 473, 56 So. 2d 841, 842, the Court said:
“ * * * A study of the testimony leads to the conclusion that there was an almost inextricable commingling of separate and community funds. There being a legal presumption in favor of the community, the burden of proving the separate derivation of any property acquired lies with the spouse asserting the same. Articles 2402, 2405, R.C. C.; Fleming v. Fleming, 211 La. 860, 30 So.2d 860; Johnson v. Johnson, 213 La. 1092, 36 So.2d 396; Cameron v. Rowland, 215 La. 177, 40 So.2d 1. With regard to immovables, the proof required on the part of the husband is even more strict: in order that property purchased by the husband during marriage should become his separate property, he should, in the act of purchase, make the double declaration> first, that it is bought with the proceeds of a sale of property belonging to himself individually; second, that the purchase is made for the purpose of replacing individual property which he had' sold; and the use of only one of these two declarations is insufficient. Sharp v. Zeller, 110 La. 61, 34 So. 129; Succession of Andrus, 131 La. 940, 60 So. 623.”
Without any attempt to cite all the cases on the subject, the following also support the doctrine here under discussion: Succession of Farley, 205 La. 972, 18 So.2d 586; Pearlstine v. Mattes, 223 La. 1032, 67 So.2d 582; Houghton v. Hall, 177 La. 237, 148 So. 37; Lewis v. Clay, 221 La. 663, 60 So.2d 78; Succession of Watkins, 156 La. 1000, 101 So. 395.
For these reasons, the judgment appealed from is affirmed. The plaintiff is to pay costs of appeal.
Affirmed.