282 So.2d 799 (1973)
Succession of Edwin C. PITTMAN.
No. 9450.
Court of Appeal of Louisiana, First Circuit.
June 29, 1973.
Rehearing Denied September 25, 1973.
Elton A. Darsey, Houma, for appellant.
Walter I. Lanier, Thibodaux, for appellee.
Before LOTTINGER, ELLIS and CRAIN, JJ.
ELLIS, Judge:
This is an appeal by Octavia La Mulle Pittman, executrix of the Succession of Edwin C. Pittman, from a judgment sustaining an opposition to the tableau of distribution filed by the children of the decedent. We quote the written reasons for judgment rendered by the trial judge, which adequately dispose of the issues here presented:
"Edwin C. Pittman, the deceased, was married twice, first to Mary Blanchard *800 from whom he was divorced on September 17, 1943, and secondly to Octavia La Mulle, on April 26, 1945. There were four children born of the first marriage, but no children were born of the second marriage. Mr. Pittman died testate on September 4, 1971, and his last Will and Testament, executed in statutory form on March 8, 1963, was probated on September 15, 1971. In accordance with the will the second wife, Octavia LaMulle Pittman, was appointed Executrix of his estate.
"Decedent left property in the Parishes of Lafourche and Terrbonne and upon the petition of the Executrix an inventory was taken in each parish. The Notary Public in Lafourche Parish was assisted by Arthur Blouin and Henry Boudreaux as appraisers.
"Decedent and his second wife resided in the settlement of Raceland in Lafourche Parish. In his will, after stating that he bequeathed to the four children of his first marriage their legitime of two-thirds (2/3rds) of his estate, he left his first wife One Thousand and no/100 ($1,000.00) Dollars in cash and then decreed that the residue was to go to his second wife, Octavia LaMulle Pittman, whom he named as Executrix. He specifically stated that in addition to her half of the community to which she was entitled by law, he was leaving her "particularly, my one half (½) in the community home at Raceland, Louisiana, which I desire her to have free of the claims of my children.....I direct my executrix to compensate my children out of my other property to make up their legitime and that my second wife shall have the home in its entirety. The value of the home and other property shall be fixed by appraisers appointed by the court.".
"Subsequently, on June 1, 1972, the Executrix petitioned for the homologation of both inventories and to fix inheritance taxes, and on that same day a judgment was rendered. Thereafter, on June 30, 1972, the Executrix filed a proposed Tableau of Distribution showing the distribution of the estate and the payment of debts. Opposition to this Tableau was filed by the four children of decedent's first marriage.
"The Tableau was contested on three points:
"(a) That the home property in Lafourche Parish was valued at only Eight Thousand, Five Hundred and no/100 ($8,500.00) Dollars, when, in fact, it had a value of approximately Fifteen Thousand and no/100 ($15,000.00) Dollars;
"(b) That this same home property was listed as community property in the inventory, despite the fact that in the deed by which the bulk of it was acquired Edwin C. Pittman specifically declared that it was purchased with money that he had earned in the year 1944, which he had kept separate from the community existing between him and Octavia LaMulle (the Executrix), that he was acquiring it as his own separate and paraphernal property and that it did not fall into the community of acquets and gains between him and Octavia LaMulle; and
"(c) That the Tableau proposed to compensate opponents for their interest in the family home with cash money, rather than making up the difference in value with other property in the succession as provided in the will.'
"At the trial of the opposition, by stipulation a certified copy of the deed of acquisition of October 5, 1949, which contained the recitation of paraphernality, was introduced. This home property consists of a house and a sixty-five foot (65') lot. Fifteen feet (15') of the lot was acquired subsequent to the 1949 purchase and it is unquestioned that this strip is community property. Although it was further stipulated that a certified copy of this deed of acquisition would be filed in evidence, since it has no bearing on the opposition it has not been filed and all parties concede that it was indeed community property.
"Opponents presented the testimony of Norbert Charles Shaver, a Thibodaux realtor and insurance agent, who was tendered *801 as an expert in real estate and whose expertise was acknowledged and accepted by defendant in the opposition. Mr. Shaver testified that he had visited the property in the morning of the trial, had taken pictures of the house in question, which were introduced without objection and appear in the record as Exhibits Opposition 3, Opposition 4, and Opposition 5, and placed a value on the house, after depreciation, of Seventeen Thousand, One Hundred and no/100 ($17,000.00) Dollars. He valued the fifty foot (50') lot on which it stood at Two Thousand, Three Hundred and no/100 ($2,300.00) Dollars, or combined with the fifteen foot (15') lot at a value of Three Thousand and no/100 ($3,000.00) Dollars. He thus places a present value on the house and sixty-five foot (65') lot of Twenty Thousand, One Hundred and no/100 ($20,100.00) Dollars as opposed to the inventory value of Eight Thousand, Five Hundred and no/100 ($8,500.00) Dollars.
"On cross examination he admitted that he had made no research of comparables, that he had no actual knowledge of the age of the dwelling, but based his depreciation of thirty per cent (30%) on an estimation that the dwelling was twenty-five years old.
"Opponents then presented the testimony of Eddie C. Pittman, son of the deceased and one of the opponents, who was questioned as to his occupation and experience (he is in the paint, tile and carpet business and has built homes for resale) and tendered him as an expert. Since he was admittedly not a qualified appraiser and realtor and since the Court did not feel that as an opponent he could be considered "objective", he was rejected as an expert, but allowed to testify as a building contractor. He placed a value of Eleven and no/100 ($11.00) Dollars per square foot on the dwelling and his valuation of the building with the lot was in excess of the Fifteen Thousand and no/100 ($15,000.00) Dollars value he had claimed in his petition in opposition. Counsel for the Executrix objected to any testimony which placed the value of the building in excess of Fifteen Thousand and no/100 ($15,000.00) Dollars, maintaining that this constituted an enlarging of the pleadings.
"Opponents rested subject to rebuttal without presenting any evidence to support the declaration of paraphernality in the 1949 deed of acquisition.
"In defense to the opposition the Executrix took the stand and testified that since the acquisition of the house in 1949, a utility room, carport and shower room had been added, the kitchen and dining room paneled, the front porch closed in, and siding put on the building. A cyclone fence had been erected to enclose the property on both sides and in back. She testified that the house was in bad need of repairs, needed new screens and new screen doors, and she felt the value was not more than the Eight Thousand, Five Hundred and no/100 ($8,500.00) Dollars which the appraisers had determined in the inventory. On cross examination, while conceding that she carried Fifteen Thousand and no/100 ($15,000.00) Dollars worth of insurance, she did not feel that the house is worth this amount of insurance.
"Mr. Henry Boudreaux, one of the Lafourche Parish appraisers, was then called and he testified that his occupation was a retail merchant; that although he had been appointed by the Court to act as an appraiser, he had no experience as such, but did feel that he was familiar with property values in Raceland; that since 1938 he had bought and sold a total of three (3) properties and was `fairly' familiar with this property. He testified that he had talked to various people and got their opinion as to value and then explained how he had arrived at the valuation of the house and lot. He placed a total value of Eleven Thousand, Two Hundred and no/100 ($11,200.00) Dollars on the house and improvements, but because he felt that it was in bad need of repair he depreciated it fifty per cent (50%), leaving a net value of *802 Five Thousand, Six Hundred and no/100 ($5,600.00) Dollars, which with the valuation of Two Thousand, Nine Hundred and no/100 ($2,900.00) Dollars on the land made a total value of Eight Thousand, Five Hundred and no/100 ($8,500.00) Dollars.
"The other appraiser and the last witness for the Executrix was Arthur Blouin who testified that his experience as an appraiser was as an insurance salesman and that he had no formal training nor was he licensed in real estate. He stated that he used a figure of Seven and 50/100 ($7.50) Dollars a square foot on the building, as had Mr. Boudreaux, and came up with the same total. On cross examination he conceded that he was neither an appraiser nor a realtor, but justified his valuation by claiming that because of the condition of the house (termites, et cetera), as an insurance man he would not insure the house for the Fifteen Thousand and no/100 ($15,000.00) Dollars for which it was now insured.
"The issues in this case are threefold:
"(a) Was the property community or separate?
"(b) What is the value of the property?
"(c) Has the Executrix the right to decide how the forced heirs of deceased will be compensated in their legitime for their value in the home property which deceased left her?
"In support of their argument that this property was, in fact, the separate property of their father, having been acquired with separate funds `that he earned in the year 1944', Opponents have cited a line of cases beginning in 1939 with the Succession of Bell [194 La. 274], 193 So. 645, progressing through the 1941 case of Sanderson v. Frost [198 La. 295], 3 So.2d 626, the 1946 case of Thomas v. Thomas, [La.App.] 27 So.2d 758, the 1952 case of Coney v. Coney [230 La. 821] 89 So.2d 55, the 1962 case of Locantro v. Falco [La.App.], 144 So.2d 742, the 1968 case of Hollier v. Fontenot [La.App.], 216 So.2d 842, and culminating in the 1969 case of Boulet v. Fruge [La. App.], 221 So.2d 602. It is their contention that all of these cases stand for the proposition that if the `double barreled' declaration of paraphernality is made by the husband, even though the property is acquired during the existence of the community this recitation in the deed of acquisitionthat the property is purchased with separate funds and is to form a part of his separate estateis sufficient to "prove" the separate status of the property.
"Counsel for the Executrix on the other hand has cited a line of cases, Huntington Adm'r v. Legros, 18 La.Ann. 126, Shaw v. Hill, 20 La. Ann. 531, Stauffer, McCready & Co. v. Morgan, 39 La.Ann. 632, Gogreve v. Deahon [Dehon], 41 La.Ann. 244 [6 So. 31], Cosgrove v. His Creditors, 41 La.Ann. 274, Schwab v. Hava, et ux [154 La. 922], 98 So. 420, Houghton v. Hall, et al [177 La. 237], 148 So. 37, Murff v. Neal, et al [La.App.], 162 So. 245, Cox v. Caldwell [La.App.], 197 So. 167, Succession of Frenek [Franek, 224 La. 747], 70 So.2d 670, Prince v. Hopson [230 La. 575], 89 So.2d 128, Monk v. Monk [243 La. 429] 144 So. 2d 384, Succession of Winney [Winsey, La.App.], 170 So.2d 732, Succession of Elrod v. Elrod [La.App.], 218 So.2d 83  which he maintains stands for the proposition that the codal presumption that property acquired during the community is community property is so strong that unless the `double-barreled' recitation is made, evidence cannot even be introduced to prove that it should have, at acquisition time, attained a separate status. It is his contention that the `double-barreled' recitation is not `proof of the separate status, but is merely a safeguard to the husband or his heirs to later permit proof to be introduced to negate the presumption that property acquired during the existence of the community is community property.
"The presumption is based on Article 2402 of the Civil Code which labels as community property that which is acquired by purchase during the marriage.
*803 "The Court listened with interest to the arguments of counsel and read cases cited in support of each argument. Our conclusion from reading the many cases cited on this point is that the appellate courts, while holding that proof beyond recitation of paraphernality is necessary, have permitted the mere recitation to seem sufficient, as witness the following excerpts:
"In order for immovable property purchased by the husband during marriage to become his separate property, it must be stated in the Act of Purchase that the land is being bought by the husband for his separate estate and with his separate funds; otherwise the property will thenceforth be conclusively presumed to belong to the community. See Coney v. Coney, 220 La. 473, 56 So.2d 841. Smith v. Smith (1956) [230 La. 509], 89 So.2d 55, 59.'
"Because the deed failed to contain the double declaration, the property in the instant case belongs to the community which existed between Joseph Boulet and Angele Johnson on the date of the sale. Boulet v. Fruge ([La.App.] 1969), 221 So.2d 602.'
"These quotations almost directly state the proposition urged by Opponents. Pittman did, in fact, recite that the land in question was being bought with funds he earned in the year 1944 (this was between marriages), which had been kept separate and apart from any money which belonged to the community that existed between him and his second wife, that the property he was acquiring was his own separate and paraphernal property and that it did not fall into the community which existed between him and Octavia La Mulle, his second wife. BUT the quoted statement was preceded by the following sentence, "As a matter of fact, the effect of a recitation of paraphernality is quite limited.". (Smith case).
"In Locantro v. Falco, ([La.App.] 1962), 144 So.2d 742, the appellate court, in denying the separate status of the property, held that the husband had failed to make the `double declaration' in his deed of acquisition and quoted from the Succession of Chapman, 225 La. 641, 73 So.2d 789, 790, to wit:
`The Court said:
'The presumption in favor of the community is juris et de jure. When a married man buys property in his name without stipulating that property is bought with his separate funds and for his separate use, the presumption in favor of the community is juris et de jure. Sanderson v. Frost, 198 La. 295, 3 So.2d 626; Slaton v. King, 214 La. 89, 36 So. 2d 648, Lewis v. Clay, 221 La. 663, 60 So.2d 78.'
"But preceding this quotation in the Locantro case, the Fourth Circuit said:

`In order to be able to prove that his ownership of those lots did not fall into the community, the deed to Dominick must contain the sacramental double declaration that the property is purchased with his separate and paraphernal funds and the property is to become and remain his separate and paraphernal estate. Plaintiff's deed does not contain any such provision. No amount of testimony can supply that omission from a deed to the husband. (Emphasis supplied).'
"Thus, it is obvious that while the court refers to the necessity of the sacred `double declaration', the court by its above statement is clearly indicating that this double declaration does no more than reserve to the husband or his heirs the right to attack or rebut the presumption of community.
"While the many cases cited by Opponents do not directly state that the `double declaration' serves only to preserve the right to attack the community status of the property, the cases cited in support of the Executrix's position clearly indicate that this is the interpretation of the appellate *804 courts. The courts refer to this principle as being well settled in our law:
`The law is well settled to the effect that property acquired during the existence of the community is presumed to be community property. LSA-C.C. arts. 2334, 2402, 2405. The burden of overcoming this presumption rests upon the party asserting the separate and paraphernal nature of the property. To overcome this heavy burden, proof must be clear, positive, and of a legally certain nature that the property was acquired with separate and paraphernal funds. It is also well settled that declarations of paraphernality by the husband are immaterial. The presumption that the funds are of the community still has to be overcome. Monk v. Monk, 243 La. 429, 144 So.2d 384 (1962); Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Franek, 224 La. 747, 70 So.2d 670 (1953); Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Succession of Winsey, 170 So.2d 732, La.App. 1st Cir. (1964).' (Emphasis supplied), Succession of Elrod v. Elrod [La.App.], 218 So.2d 83.'
"We conclude, therefore, on this first question that over the years a jurisprudential doctrine has evolved supplementing the codal presumption that property acquired during the community is community property, prohibiting the husband from introducing evidence to prove the separate nature of the property if the deed of acquisition fails to contain the `double declaration'. We hold that the `double declaration' is not in itself proof of the separate status and does not of itself overcome the presumption; it merely permits the introduction of evidence if a party seeks to prove the separate nature of property acquired during a community. The latest expression of the sacramental nature of this `double declaration', continuing this jurisprudential doctrine, can be found in the very recent case of Poole v. Poole, ([La. App.] 1972), 270 So.2d 218, wherein the court said:
`it is well established that a husband purchasing immovable property during the existence of a marriage must make a declaration in the act of conveyance that the property acquired is to be his separate property and the funds used to purchase are his separate funds. In absence of such a declaration the property is presumed to be community property and his presumption is conclusive. Therefore, this immovable property belongs to the community estate. LSA-C.C. arts. 2334, 2402. Smith v. Smith, 230 La. 509, 89 So.2d 55 (1956). Boulet v. Miguez, 221 So.2d 602 (3rd La.App. 1969).' (Emphasis supplied).'
"The court's statement that in the absence of the double declaration the `presumption is conclusive' is indicative to this Court that the First Circuit is again declaring that the `double declaration' merely maintains the presumption as a rebuttable presumption to permit the introduction of evidence.
"Opponents failed to introduce any evidence whatsoever in support of the decedent's declaration in his deed that the property had been purchased with his separate funds. The presumption of community has not been rebutted, and the inclusion of this property in the inventory as community property is therefore upheld.
"Having determined that the home property was community property, we need not concern ourselves with the value of the property at the time of acquisition or the value of the additions recognized to have been made as community additions, but merely with the value of the property for inventory purposes as of the date of death. The only recognized `expert' realtor and appraiser who gave testimony in his case was Mr. Charles N. Shaver, who testified on behalf of Opponents. He was tendered as an expert by counsel for Opponents and accepted by counsel for the Executrix as such. It was his testimony that the house, with improvements, had a replacement value of Twenty-Four Thousand, Four Hundred *805 Fifty-four and no/100 ($24,454.00) Dollars. He subjected this figure to a thirty per cent (30%) depreciation based on his estimate that the house was twentyfive years old, which left a net value of Seventeen Thousand, One Hundred Eighteen and no/100 ($17,118.00) Dollars, which he rounded off at Seventeen Thousand One Hundred and no/100 ($17,000.00) Dollars. He valued the fifty foot (50') lot at Two Thousand, Three Hundred and no/100 ($2,300.00) Dollars and the sixty-five foot (65') lot at Three Thousand and no/100 ($3,000.00) Dollars, or a total value of Twenty Thousand, One Hundred and no/100 ($20,100.00) Dollars.
"However, by the unrebutted testimony of the witnesses for the Executrix, the house was actually thirty-six years old. Applying Mr. Shaver's depreciation of one and two/tenths per cent (1.2%) per year, the depreciation factor should have been forty-three and two-tenths per cent (43.2%) instead of the thirty (30%) per cent he has applied. This, therefore, reduced the present value of the house and improvements from Seventeen Thousand, One Hundred and no/100 ($17,100.00) Dollars to Thirteen Thousand, Eight Hundred and Eighty-nine and 87/100 ($13,889.87) Dollars combined with the value of the land, which does not suffer depreciation, for a total of Sixteen Thousand, Eight Hundred Eighty-nine and 87/100 ($16,889.87) Dollars.
"In opposition to this expert testimony on value, the Court heard the testimony of the Executrix and the two appraisers appointed for the inventory. By their own admissions, Mrs. Pittman, the Executrix, and Mr. Boudreaux, and Mr. Blouin, the appraisers, were neither relators nor professional appraisers and the experience of all three was very limited.
"Accordingly, the Court will accept the valuation as placed by Mr. Shaver, the `acknowledged expert'.
"It may be noted here that at the time of Mr. Shaver's testimony and the testimony of one of the Opponents, counsel for the Executrix objected to any evidence which increased the value beyond the claimed value of Fifteen Thousand and no/100 ($15,000.00) Dollars, maintaining that to permit the introduction of this evidence would constitute an enlargement of the pleadings. The Court finds that Opponents in their petition opposing the valuation of Eight Thousand, Five Hundred and no/100 ($8,500.00) Dollars on this property allege that it had a value of approximately Fifteen Thousand and no/100 ($15,000.00) Dollars. Since we have determined the value from the evidence to be Sixteen Thousand, Eight Hundred Eightynine and 87/100 ($16,889.87) Dollars, we feel that this falls within the allegation of `approximately' and, therefore, see no merit to the objection or any need for the Court to discuss this point at length.
"And finally, Opponents deny the Executrix the right to decide how the forced heirs of deceased will be compensated in their legitime for their proportionate share of the value of the home property which was bequeathed to the Executrix. The Executrix proposes in the Tableau to make up this value in cash. However, it is a well settled point of law that the wishes of the Testator should be strictly construed and the estate distributed in accordance with these wishes.
"The Court notes that the first bequest in the decedent's will was of the legitime, which, because he had four (4) children, was declared to be two-thirds (2/3) of his estate. The next bequest was the sum of One Thousand and no/100 ($1,000.00) Dollars in cash to his first wife, Mary Blanchard Pittman, and finally he leaves the residue of his estate, particularly his half of the community home, to his second and surviving wife, Octavia La Mulle Pittman. He directs her to compensate his children out of `my other property' to make up their legitime so that she would have the home in its entirety, free from any claim by them. At his death, his estate owed Eighty-seven and 52/100 *806 ($87.52) Dollars as his share of outstanding community debts and with his separate debts for funeral expenses and the settlement of his estate totalling Three Thousand, Nine Hundred Sixty-three and 71/100 ($3,963.71) Dollars the total debts amounted to Four Thousand, Fifty-one and 23/100 ($4,051.23) Dollars. We further note that at the time of his death the only cash was a checking account in Lafourche Parish in the amount of Three Thousand, Two Hundred Thirty-one and 48/100 ($3,231.48) Dollars, half of which, or the sum of One Thousand, Six Hundred Fifteen and 74/100 ($1,615.74) Dollars, belonged to his estate. In short, at the time of his death he did not leave sufficient cash to meet the obligations.
"The Executrix proposes in the Tableau to compensate the heirs for their portion of the family home in cash, but to do this, list as assets collections received subsequent to his death, primarily royalty collections from producing property in Terrebonne Parish. This cash was not a part of his estate nor was it listed in his inventory, nor was it considered in the computation of inheritance tax, and the omission is correct because it was not in existence at the time of his death. Consequently, the Court cannot approve using this money to make up the legitime due the forced heirs. Decedent specifically stated that they were to be compensated `out of my other property', and we, therefore, hold that it is incumbent upon the Executrix, and she is so directed in the will, to make up their legitime from the other property, that is, property besides his interest in the community home, and their two-thirds (2/3rds) interest in all of the other items, and the thousand dollar legacy to their mother. It must come from the disposable portion of the other assets. The Court, therefore, sustains the Opponents in their opposition to the Tableau in this respect, and accordingly,
"IT IS ORDERED, ADJUDGED AND DECREED that (1) the family home is correctly included in decedent's estate as community property, (2) the Tableau of Distribution filed herein be amended to provide that the family home as listed under Items 1 and 2 of the Lafourche Parish inventory be valued at the sum of Sixteen Thousand, Eight Hundred Eighty-Nine and 87/100 ($16,889.87) Dollars, and (3) the Executrix, Mrs. Octavia La Mulle Pittman, compensate the four opponents, children of the first marriage of Edwin C. Pittman to Mary Blanchard, out of other property of the estate of Edwin C. Pittman to make up the value in their ligitime of their interests in decedent's half of the community home bequeathed to the Executrix, Mrs. Octavia LaMulle Pittman."
In this court, for the first time, the Executrix has argued that the values placed on the mineral interests in the estate are too low. She claims that the trial court should have accepted or rejected the valuations contained in the inventories in toto, and asks that the case be remanded for further evidence as to the value of the mineral interests. The contention is without merit.
Under Article 3135 of the Code of Civil Procedure, a public inventory is "prima facie proof of all matters shown therein", and may be traversed only by contradictory motion. No motion has been filed by any party contesting the valuations placed on the mineral interests, nor has any evidence been offered to show that they are incorrect.
The tableau of distribution, which was filed by the executrix, is based on the values shown in the inventory, the homologation of which was sought and obtained by the Executrix. We are of the opinion that she has thereby judicially admitted the correctness of the matters therein set forth. She can not now attack her own declarations and acts. Article 2291, Louisiana Civil Code; Succession of Prudhomme, 23 La.Ann. 228 (1871).
The judgment appealed from is therefore affirmed, at the cost of the appellant.
Affirmed.