**89 So.2d 55**

**Erma SMITH**

**v.**

**Calloway W. SMITH.**

**No. 42414.**

**June 11, 1956.**

McHenry, Lamkin, Snellings & Breard, Monroe, for defendant-appellant.

Oliver & Oliver, Monroe, for plaintiff-appellee.

HAWTHORNE, Justice.

Erma Smith instituted this suit under the Louisiana Declaratory Judgments Act against her father, Calloway W. Smith, seeking to be declared the sole owner of a parcel of improved land in Ouachita Parish which was acquired by her deceased mother, Celia Feazel Smith, during the existence of her marriage with the defendant.

The petition in this case alleges that Celia Feazel was married to Calloway W. Smith on December 8, 1907; that petitioner is the only issue of this union; that on January 18, 1945, Celia Feazel Smith bought a tract of land with funds donated to her by W. C. Feazel for this purpose; that this property was acquired by Celia Feazel with separate funds for her separate estate; that upon the death of Mrs. Smith the ownership of this immovable vested in petitioner; and that Calloway Smith claims an undivided one-half interest in the property on the ground that it is community property.

Defendant questioned plaintiff's right to have the separate or community nature of this property decided in a declaratory action by filing exceptions of no cause or right of action, which by consent of the parties were referred to the merits. Defendant then answered, admitting that he was claiming a half-interest in the property on the ground that it was community property. After trial on the merits the judge rendered a declaratory judgment decreeing that the property had been the separate property of Celia Vera Feazel Smith and presently formed part of her separate estate. Calloway W. Smith appealed.

The first question presented by this appeal is the correctness of the judgment rendered in this proceeding brought under the provisions of the Louisiana Declaratory Judgments Act, R.S. 13:4231 et seq.

The Louisiana Declaratory Judgments Act provides in R.S. 13:4232 that "Any person interested under a deed * * * may have determined any question of construction or validity arising under the instrument * * * and obtain a declaration of rights, status or other legal relations thereunder." It is perfectly apparent that the judgment here appealed from declaring the property to be the separate property of Celia Vera Feazel Smith and belonging to her separate estate falls squarely within the provisions of this statute.

In brief in this court appellant concedes that the language of the act is broad enough to cover these proceedings, but argues that the instant case must be dismissed on exceptions of no cause or right of action because it is an attempt on the part of the plaintiff to substitute declaratory proce-

dure for the established succession procedures of Louisiana.[1] In support of this argument appellant relies on a certain pronouncement of this court in the recent case of Burton v. Lester, 227 La. 347, 79 So.2d 333, 335, to the effect that the Declaratory Judgments Act was never intended to supplant the ordinary procedures of Louisiana law.

The language in Burton v. Lester, supra, upon which appellant relies, is as follows:

"* * * The statute is undoubtedly a most valuable supplement to the cumbersome common law procedure but its worth to a State like Louisiana, having a Code of Practice which has worked satisfactorily and efficiently for over 80 years, remains to be proven. At any rate, we do not believe that the statute should be employed as a substitute for the well-defined actions provided for in our Code of Practice or those which have been established by jurisprudence unless, by reason of the special circumstances of the case, the codal procedure does not furnish an adequate remedy.

"* * * Hence, we must perforce construe and apply the act according

to its own terms, giving due regard to our established procedure so that it may take a useful and proper place therein. By adopting this course, we deduce, as we have stated above, that the Act is merely an adjunct to the civil procedure outlined in our Code of Practice of 1870 and should not be substituted therefor, save upon a showing by the litigant seeking the declaratory relief that the ordinary or summary proceedings recognized in the law and jurisprudence do not avail him an adequate remedy."

Relying on the Burton case appellant argues that the lower court's judgment is erroneous because it partially adjudicates by declaratory judgment title to real estate in an unopened succession, not known to be solvent or insolvent, testate or intestate; because it does not respond to the prayer of the petition; and because it does not definitively settle the title in controversy. Appellant further contends that appellee's proper remedy here would be to precipitate an administration or executorship of her mother's estate, and in those proceedings contest with her father the ownership of this property.

1. Counsel for appellee in brief and oral argument before this court inform us that she is in actual possession of the property, that her possession has not been disturbed, and that her title has not been slandered, and that therefore none of the real actions provided for in our law is available to her. Appellant does not deny this statement. This is apparently why appellant does not contend that appellee instituted this action under the Declaratory Judgments Act as a substitute for one of our real actions.

We cannot agree with appellant's contentions. If appellee in an ex parte proceeding opened her mother's succession, established her heirship, and had it judicially determined whether her mother had died testate or intestate, solvent or insolvent, and whether she had died possessed of any other property, such an ex parte proceeding would not definitively determine whether this property belongs to the separate or community estate of the deceased; and a judgment sending appellee into possession of this property would not be res judicata as between her and her father on this issue. Consequently it appears to us that a suit for declaratory judgment is quite appropriate here.

■ Appellant also argues that by filing this suit appellee seeks to accept only a part of her mother's succession, contrary to the provisions of Article 986 of the Civil Code. In Griffing v. Taft, 151 La. 442, 91 So. 832 (on rehearing), this court held that the institution of a suit claiming title to property by inheritance from a deceased person is an unconditional acceptance of that person's succession. It is therefore clear that Erma Smith is not attempting to accept her mother's succession piecemeal in violation of Article 986, because in bringing this suit she accepted the entire succession.

2. Feazel was also giving Mrs. Charlie King, another sister, $4,400 to buy a

The second question presented by this appeal is whether the house and lot which Celia Smith bought in Monroe, Louisiana, a few weeks before her death became her separate property or fell into the community of acquets and gains then existing between her and her husband. The pertinent facts are these:

In the latter part of 1944 or the early part of 1945, W. C. Feazel told his sister, Celia Feazel Smith, that he wanted to give her the money to buy a home in Monroe, Louisiana. The brother and sister decided that Feazel's friend and attorney, S. L. Digby, would represent both of them in the ensuing transaction, and thus Digby became the agent of both Feazel and Celia Smith in the donation and purchase which gave rise to this controversy. Accepting this dual agency, Digby went to E. W. Cruse, who was in the real estate business in Monroe, and arranged to purchase for $4,400 a house and lot for Mrs. Smith. Feazel then sent Digby a check for $8,800, noting thereon: "For: Purchase of homes for Mrs. Smith & Mrs. King."[2] This check was marked paid on January 18.

Cruse conveyed the property involved in this controversy to Mrs. C. W. Smith for $4,400 in cash by deed executed and filed for record on January 18, the same day the check was cashed. The deed is signed by the vendor, and also by Calloway Smith,

house in Monroe, and Digby was also handling that transaction.

below whose signature appears the phrase "I authorize my wife to accept this deed". There is no recitation of paraphernality in the instrument. Upon execution of this act of sale Digby immediately paid Cruse $3,000 in cash but withheld the balance of the purchase price until Cruse could make certain major repairs to the house. On the completion of the repairs Digby paid Cruse the balance of $1,400 and took from him his receipt showing this amount. This receipt reads as follows:

"Monroe, Louisiana
"March 14, 1945.

"Received of S. L. Digby, the sum of $2800.00, constituting the remaining payment of $4400.00 each on the two pieces of property sold by E. W. Cruse to Mrs. C. A. King and to Mrs. C. W. Smith, all of which said money was donated by W. C. Feazel and handled through his Agent, S. L. Digby.

"This 14th day of March, 1945.

(signed) "E. W. Cruse"

Meanwhile, after the execution and recordation of the deed, but before the payment of the amount withheld pending the repairs, Mrs. C. W. Smith died on February 8, 1945.

Property purchased in the name of either spouse during the existence of the community of acquets and gains in Louisiana is presumed to be community property. Arts. 2334, 2402, La.Civ.Code; Salassi v. Salassi, 220 La. 785, 57 So.2d 684.

Moreover, this presumption of community exists even though a realty deed contains the recital that the property is being bought with separate funds. Houghton v. Hall, 177 La. 237, 148 So. 37; Succession of Le Jeune, 221 La. 437, 59 So.2d 446; Johnson v. Johnson, 213 La. 1092, 36 So.2d 396. As a matter of fact, the effect of a recitation of paraphernality is quite limited. In order for immovable property purchased by the husband during marriage to become his separate property, it must be stated in the act of purchase that the land is being bought by the husband for his separate estate and with his separate funds; otherwise the property will thenceforth be conclusively presumed to belong to the community. See Coney v. Coney, 220 La. 473, 56 So.2d 841. On the other hand, when a married woman buys real property in her own name, failure to make a recitation of paraphernality in the deed is not fatal, and she or her heirs may later overcome the presumption of community by showing with legal certainty (1) that the funds constituting the price paid for the property were her paraphernal funds, (2) that they were administered by her, and (3) that they were invested by her. Houghton v. Hall, supra; Succession of Farley, 205 La. 972, 18 So.2d 586; Betz v. Riviere, 211 La. 43, 29 So.2d 465; Cameron v. Rowland, 215 La. 177, 40 So.2d 1.

The property in the instant case was purchased by the wife during the

existence of the community, and therefore under our law is presumed to be community property. However, we think that appellee has overcome the presumption of community and has established with legal certainty that this real estate was bought by Celia Smith with her paraphernal funds for her separate estate. Appellee has carried the burden of proof by showing that Feazel gave his sister's agent $4,400, that as this money was a donation made to Celia Smith particularly it became her separate property, and that Celia Smith's agent, Digby, immediately invested these paraphernal funds in the property involved in this declaratory action.

Feazel gave his check for $4,400 made payable to S. L. Digby, and the check was paid on January 18. In other words, at the moment the check was paid, Digby received the money or currency which the check represented, and this completed the transfer to him of this money. Succession of DePouilly, 22 La.Ann. 97.[3] Digby, acting for Mrs. Smith and as her agent, accepted this sum of money for her, and proceeded, as her agent, to use this money to pay the purchase price of the property here involved. Consequently it became the separate property of Mrs. Smith. Marlatt v. Citizens' State Bank & Trust Co., 180 La. 387, 156 So. 426.

That it was Feazel's intention to give the $4,400 to his sister particularly is evidenced by the fact that for the year 1945 Feazel made a federal gift tax return reporting certain gifts to Mrs. Smith totalling $5,408.26 including the item of $4,400 given to her in January. No report was made of any gift to Mr. Smith. Feazel's certified public accountant testified that Feazel had to pay a gift tax on the amount of these gifts to Mrs. Smith because they were in excess of $3,000; but that if the gifts had been made to Mr. and Smith jointly, no gift tax return would have been necessary under federal tax regulations then in existence because no declaration on gifts less than $3,000 was required by those regulations.

In arguing that this house and lot are community property counsel for appellant make several points. They lay great stress on the fact that the deed conveying the disputed property to Mrs. Smith contained no recitation of paraphernality. In view of the very limited effect of such a recitation, as noted earlier in this opinion, its absence in this deed is not significant. Counsel also mention that Judge Digby did not know Mrs. Smith, whereas he was acquainted with the husband, who was present during various steps in the purchase of the house. This fact does not impress us as being of any importance. Although

3. See also Succession of Leroy, 157 La. 1077, 103 So. 328, 40 A.L.R. 503, and cases there cited.

Digby had no personal relationship with Mrs. Smith, Feazel testified that he and his sister had agreed that Digby would receive the money and handle the purchase, and Digby made it plain at the trial that throughout this whole affair he was Mrs. Smith's agent. Counsel for appellant also call our attention to the fact that at the trial Calloway Smith said that it had been his understanding that the property was to belong to both him and his wife, and that he had picked out the house himself. What we have here is simply a conflict of testimony, as Digby, testified that it was he, Digby, who had selected the house for Mrs. Smith, and that her husband had been at most a casual observer; and this evidence is borne out by the testimony of the donor. Moreover, Digby testified that he had never had any intention of acquiring this property for the benefit of the community which existed between Mr. and Mrs. Smith, and Feazel's testimony is to the same effect.

Counsel for appellant also make much of the fact that the husband in the instant case signed the act of sale and below his signature wrote: "I authorize my wife to accept this deed." Counsel contend that this can only mean that the husband was authorizing his wife to accept the property for the community. This construction strikes us as unsound. When asked at the trial why this statement by the husband was added to the deed, Judge Digby suggested that it was probably a relic from the days before the Married Women's Act of 1928, and this appears to us to be a more reasonable explanation of the matter.

Further, counsel for appellant point out that Mrs. Smith died before all the purchase money was paid to the vendor, E. W. Cruse. We have already noted that the sale in this case took place on January 18, 1945; that on February 8, 1945, Mrs. Smith died, and that on March 14, 1945, Digby paid Cruse $1,400 which he had held back on the purchase price pending the completion of needed repairs to the property by Cruse. Appellant contends, apparently, that the sale was not completed until March 14. This position is untenable. There is no such thing as a conditional sale in Louisiana, and this sale of real estate was complete on the day the act of sale was signed, several weeks before Mrs. Smith's death. Appellant also takes comfort from the fact that after his sister's death Feazel furnished the house as previously arranged, and that Smith moved to Monroe and lived in the place for a couple of years. It appears that these are facts to be considered in determining the community or separate nature of this property, but of no great significance in themselves.

The judgment is affirmed at appellant's costs.