HERGET, Judge
(dissenting).
Celia Murray, plaintiff, prosecutes this appeal from a judgment rendered in the District Court dismissing her suit for eviction of the defendant, Leon Shaw, and declaring null and void a sale to her by Mattie Murray Lewis of an undivided one-half interest in Lot 13, Square 45, of a subdivision in the City of Baton Rouge known as South Baton Rouge.
Celia Murray and Mattie Murray Lewis were sisters. Mattie Murray Lewis died in 1961. One month thereafter plaintiff, Celia Murray, instituted this suit to evict Mattie’s widower, Leon Shaw, from the premises.
Shaw answered plaintiff’s suit and filed a reconventional demand in which he alleged the sale from Mattie Murray Lewis to Celia Murray was defective in two respects: (1) the property allegedly transferred by Mattie Murray Lewis was community property and Mattie Murray Lewis, accordingly, had no authority to transfer same; and (2) plaintiff, Celia Murray, fraudulently and deceptively prevailed upon Mattie to execute the deed by which the property was in fact conveyed.
To the reconventional demand filed by Leon Shaw, plaintiff, Celia Murray, filed exceptions — of prescription, no cause and no right of action and a plea of estoppel —contending the right to contest the act *701 of sale in question had been prescribed inasmuch as more than ten years had elapsed from the date thereof prior to the assertion of the claim; and, further, Leon Shaw was without right to contest the sale.
LSA-C.C. Art. 1921 provides:
“Effect of transferror remaining in possession of immovables
“Art. 1921. In cases, however, of contracts, which purport to transfer the ownership of immovable property, if he who transfers it is suffered by the obligee to reamain in corporal possession for a longer time than is reasonably required to deliver the actual possession and to act as owner, to the injury of a third person, who may afterwards contract with him, or acquire rights upon his property as creditor, it will be considered as a mark of fraud, and will throw the burden of proving that the contract was made bona fide upon him to whom the ownership of the property was transferred by the first contract, in any controversy with creditors of the obligor or persons acquiring bona fide intermediate rights by contract with him.”
I believe a casual reading of this article is sufficient to, when considered with my evaluation of the evidence tendered on the trial of this case of the attempted fraud perpetrated, make evident — though in sales wherein the parties act in good faith ten years prescription is sufficient to make valid the title — the factual situation depicted herein is the very antithesis of good faith. Accordingly, the plea of prescription should be overruled.
Insofar as the plea of estoppel and the exception of no cause and no right of action are concerned, I am of the opinion same are without merit inasmuch as Leon Shaw, the sole heir and surviving spouse of his deceased wife, Mattie, who died leaving no ascendants or descendants, is presumed to have an interest in her suc-cesssion, of which the property here in contest is a part.
This record is replete with discrepancies and contradictions and contrary to the fact many believe “truth will not out” where there is fraud and deceit, the light does show thereon. Fortunately, this condition is made evident by the introduction of documentary evidence from which I am in a position to justiciably resolve the issues, confident my decision in this respect is well supported and I can, with ease, discard the improbable, and what I believe to be the untruthful, versions presented for my consideration by witnesses for Plaintiff.
I glean from the evidence Celia Murray possessed a higher degree of intelligence than did either her sister or the witnesses who gave testimony on the trial of the factual situation we are called upon to resolve. It is apparent Celia resolutely "and with deliberate cunning sought to acquire the interest of her sister in the property.
In my appreciation of the evidence I believe same reveals Mattie and Celia were illegitimate children of Annie Brister, who, by convenience, at one time lived with a man named George Lewis and at another time sojourned with a man by the name of Murray. Presumably these, or one of them, was the natural father of Mattie and Celia.
On October 3, 1938 Celia Murray and Mattie Murray Lewis jointly purchased from Robert A. Hart the property over which this controversy arises. In the act of sale it was recited both vendees were “femme soles”. Despite this recitation in the act of sale, the evidence unquestionably shows Mattie married Sidney Candóle in the Parish of Assumption in the year 1918; that Sidney Candóle died on June 26, 1948 and there is no evidence of a divorce having been obtained by either party,, though, in 1938, at the time Mattie and Celia purchased the property contention is made that at that time Mattie and Sidney *702 were living separate and apart I am unable to determine whether Sidney and Mattie were living separate and apart upon the acquisition of the property. On this point the testimony of the witnesses is in hopeless and irreconcilable conflict and therefore does not support the conclusion of the majority, Mattie “resided alone, and never lived with or returned to her husband during this time.” Nonetheless, I perceive no need to resolve the question of the paraphernality of the property to determine the validity vel non of the sale. Upon the acquisition of the property by these devoted sisters, each built houses on the property and each lived in her own house until Mattie died in 1961. On February S, 1946 Mattie, by notarial act, sold her interest in the property to her sister, Celia. This is the sale for which nullity is sought and is the object of this controversy. It is noteworthy in the act of sale there is the recitation that Mattie was married but once and then to Sidney Lewis, whereas Celia Murray was described as a “femme sole”. Though the recitation is made Mattie was married to Sidney Lewis, no evidence of such marriage was offered in the record. Had the act of sale of 1946 depicted truthfully the marital stati it should have apprised the world that Mattie was married at that time to one Sidney Candóle and her sister, Celia, was married to Manzy Williams, whom she married in 1940.
I am of the opinion counsel for the Defendant is mistaken in his assertion that a sale, wherein a wife sells community property without her husband’s appearance therein, is an absolute nullity. Though, unquestionably in such a transaction, the husband might have valid reasons to attack such a sale and seek its voidance, the evidence herein shows Sidney Candóle, who presumably may have instituted such suit, departed this life on June 26, 1948 long prior to the institution of the present litigation and there is no appearance made by his representatives protesting the right of Mattie Murray to sell the property in controversy.
Under LSA-C.C. Articles 2334 and 2402 property purchased in the name of either spouse during the existence of the community is presumed to be community property even though the deed recites the para-phernality thereof and even though in the acquisition of property by a married woman there is a policy to make the recitation of paraphernality in the deed itself, such declarations are not fatal and the presumption falls when the evidence reveals the property to have been purchased with para-phernal funds under the separate administration of the wife. Smith v. Smith, 230 La. 509, 89 So.2d 55; Succession of Blades, La.App., 127 So.2d 263.
Mattie Murray married Leon Shaw, defendant herein, on September 20, 1949. They lived on the premises in dispute until Mattie’s death.
The validity of the sale is further contested by Defendant on the ground he and his wife, Mattie, lived on the premises for thirteen years, Mattie believing herself to be the true owner.
I am not impressed with the testimony of Celia wherein she would have this Court believe her incredulous contention, considering Mattie’s meager means, she permitted her to remain on the premises rent free, as a satisfactory explanation of her willingness to permit Mattie to remain on the premises. The circumstances under which the sale in this instance was made thereby distinguishes our holding in Succession of Kramer, La.App., 130 So.2d 688, wherein, though there was a presumption of simulation, this presumption was rebutted, and the true consideration was proved to have been given.
LSA-C.C. Art. 2480 provides:
“Retention of possession by seller, presumption of simulation
“Art. 2480. In all cases where the thing sold remains in the possession of the seller, because he has reserved to himself the usufruct, or retains posses *703 sion by a precarious title, there is rear-son to presume that the sale is simulated, and with respect to third persons, the parties must produce proof that they are acting- in good faith, and establish the reality of the sale.” (Emphasis mine.)
Inasmuch as Mattie could neither read nor write Celia obtained a power of attorney to make deposits in and withdrawals of funds from Mattie’s bank account. Unquestionably Mattie entrusted all business matters to the judgment of her sister. In 1959 Mattie and Leon Shaw desired to make certain improvements in the property, consisting of adding a room and bath and installing a window screen. Celia obtained the necessary funds for such improvements, $1,373.60, by placing a mortgage on the property, executing a note for said amount and obtaining Mattie’s endorsement thereon. Mattie and Leon paid the amount of this note with their own funds and, in addition, paid the taxes on the property and paid a sewerage tax and property lien thereon.
Giving consideration to the evidence elicited on the trial of this case and the presumption delineated in LSA-C.C. Art. 2480, quoted supra, I have no difficulty in concluding the alleged sale from Mattie to Celia was simulated, a sham and of no legal effect.
I am in thorough accord with the finding of the Trial Court, Celia attempted to take advantage of her sister’s illiteracy and fraudulently acted in an attempt to obtain the property.
As Defendant and Plaintiff in reconvention, Leon Shaw additionally seeks the sum of $210 which Celia Murray withdrew from the bank account of Mattie and Leon Shaw for her own use. The evidence leaves little doubt that Celia, clothed with the power of attorney from Mattie, withdrew from Mattie and Leon Shaw’s bank account the $210 and used same for her own benefit. The judgment of the Trial Court recognizing such fact is, in my opinion, unquestionably correct.
LSA-C.C. Art. 1881 provides:
“Voidability of contracts by injured party
“Art. 1881. Engagements made through error, violence, fraud or menace, are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, fraud, violence or menace, or by the representatives of such parties.” (Emphasis mine.)
For these reasons I am of the opinion the judgment should be affirmed at appellant’s costs and, accordingly, I respectfully dissent.