LANDRY, Judge.
This appeal is by Rojah Evans, the alleged surviving spouse in community of decedent Mary Byrd Evans, (who died testate on November 8, 1961), from the judgment of the trial court rejecting said appellant’s action to annul the last will of said decedent insofar as the testament seeks to dispose of claimant’s asserted one-half interest in and to certain property (consisting of a home and the contents thereof) avowed by appellant to belong to the community of acquets and gains existing between him and said decedent.
*739 Opposition to appellant’s said claim was registered by Allie Mae Bagent and Linda Gallo, legatees to whom decedent bequeathed her entire estate to be divided between them equally, on the following grounds: (1) Claimant was not the surviving widow in community of decedent inasmuch as decedent was the lawful widow of one Albert Allain from whom she was never divorced; (2) the property in question was the separate property of decedent having been acquired by her while living separate and apart from her lawful husband, Albert Allain, with funds earned by her separate employment; alternatively, if the alleged marriage between appellant and decedent were valid (or putative as to appellant) the property in dispute is the separate property of decedent inasmuch as it was purchased while decedent was living separate and apart from appellant with funds earned by her separate employment while living separate and apart from appellant; and (3) in the further alternative, appellant is without interest in subject property having divested himself of his asserted one-half interest therein by donation inter vivos to the legatee, Linda Gallo, by notarial act executed January 31, 1962.
In substance appellant maintains the property in dispute belongs to the community of acquets and gains which existed between him and decedent by virtue of their marriage contracted June 2, 1934, which said marriage is valid because decedent was free to enter into said union by virtue of the pri- or death of her first husband or the previous annulment of her former marriage by divorce. Alternatively, appellant contends he was in good faith in believing there was no impediment to decedent’s marriage to him consequently as to him the marriage was a putative union from which civil effects flowed in his behalf. On these premises appellant argues the property in dispute fell into the community existing between him and decedent inasmuch as it was acquired by decedent while appellant and decedent were living together as man and wife. With respect to the donation inter vivos to Linda Gallo, claimant maintains said instrument is void because his alleged signature thereto is a forgery and alternatively because it divested him of all his property and he failed to retain in his hands sufficient funds for his maintenance contrary to LSA-C.C. Article 1497.
Our learned brother below dismissed appellant’s opposition on the ground the property in dispute was the separate and para-phernal property of decedent acquired while she was living separate and apart from appellant with funds earned by her in her separate employment.
In his brief learned counsel for appellant maintains the trial court erred in failing to find a valid marriage, or one putative as to appellant, existed between decedent and appellant during which the property in dispute was acquired by decedent while living with appellant as husband and wife. Esteemed counsel further argues our colleague below also erred in failing to declare the donation inter vivos to Linda Gallo void for the reasons hereinabove set forth and declining to recognize appellant as owner of an undivided one-half interest in subject property
Assuming, as argued by able counsel for appellant, a valid marriage or a union putative as to appellant existed between appellant and decedent, if our esteemed brother below correctly concluded the property in question was the separate and paraphernal property of decedent, the judgment appealed from is correct and the remaining issues raised by appellant are of no moment.
It is settled law that in the absence of a testamentary disposition in his or her favor neither husband nor wife inherits the separate and paraphernal estate of his or her spouse except in those cases where the decedent leaves no ascending, descending or collateral relations. Laroux v. Myers, La.App., 144 So. 117.
*740 As correctly argued by esteemed counsel for appellant, it is settled law that property acquired during marriage is presumed to fall into the community of acquets and gains existing between the spouses notwithstanding its acquisition in the name of the wife alone. LSA-R.C.C. Articles 2334, 2402; Salassi v. Salassi, 220 La. 785, 57 So.2d 684; Smith v. Smith, 230 La. 509, 89 So.2d 55; Succession of Viola, La.App., 138 So.2d 613.
The spouse (or those claiming through him) who maintains property bought during marriage does not fall into the community of acquets and gains bears the burden of establishing the parapher-nality of the purchase. LSA-R.C.C. Article 2405; Coney v. Coney, 220 La. 473, 56 So.2d 841; Succession of Schnitter, 220 La. 323, 56 So.2d 563; Cameron v. Rowland, 215 La. 177, 40 So.2d 1; Succession of Viola, La.App., 138 So.2d 613.
To rebut the presumption that property acquired during the existence of a marriage is community property, an extremely high degree of proof is required. To overcome such presumption the jurisprudence is well settled to the effect the proof must be “strict, clear, positive, and legally certain”. Succession of Blades, La.App., 127 So.2d 263.
The issue presented is factual in nature consequently its determination necessitates detailed consideration of the evidence adduced at the trial below.
The record herein shows the property in dispute, a house and lot located on Church Street, in that part of the City of Bogalusa known as “Poplas Quarters” was acquired by decedent Mary Byrd Evans pursuant to a Notarial Act of Sale with Mortgage executed July 6, 1954, wherein the purchaser was designated as “Mary Byrd Evans, nee Byrd, a widow.”
Appellant maintains he and Mary Byrd were lawfully married June 2, 1934, as evidenced by a certain marriage certificate appearing of evidence herein. It is contended by appellant that subsequent to his marriage to decedent, lie and decedent lived together in Bogalusa but that appellant was frequently absent from the marital domicile working in other places because of his inability to find steady local employment.
Appellant concedes he was absent from Bogalusa because of his employment in the State of Florida on the date of the acquisition in question. He maintains that shortly before purchasing the property in question, decedent contacted him by telephone and advised of the pending transaction. He counseled decedent to make the purchase and sent her approximately $60.00 in cash at this time. Appellant further contends that during the period 1954 to the decedent’s death he was frequently away from Boga-lusa working in Florida, Gulfport, Mississippi, St. Francisville, Louisiana, and certain localities near Bogalusa. For the three year period 1959-1962, appellant was employed at a state institution situated at Mandeville, Louisiana. Succinctly stated, it is appellant’s position (and he so testified) that during his periods of employment in Bogalusa he resided with decedent as her husband and when employed elsewhere he periodically returned to the matrimonial domicile and at no time was he separated from decedent. In addition, he testified he sent decedent money whenever he could. Appellant frankly concedes decedent was a fine, hardworking woman who conserved her means and income.
To some extent appellant is corroborated by his sister, Pauline Verger, who testified that her brother and decedent never lived separate and apart except when by necessity appellant was compelled to leave Boga-lusa in search of employment. On these latter occasions appellant always returned to visit and live with decedent whenever the opportunity afforded. According to this witness when appellant resided in Florida he returned to Bogalusa about every other *741 month but when working nearer Bogalusa he returned at approximate two week intervals.
Thelma Roscoe, a niece of decedent Mary Byrd Evans, appearing on behalf of appellant at first testified that to her knowledge appellant and decedent lived together in the home situated on the disputed property from the year 1948 when the witness returned from California. In this she was mistaken inasmuch as it is undisputed that the property in question was not occupied by decedent until shortly before its purchase by her in 1954, and prior to moving to Church Street decedent occupied a home on Austin Street. Upon being so apprised the witness acknowledged her error and recalled that she returned from California in or about 1958 instead of 1948. From the time of her return, however, she was certain appellant lived with decedent whenever he was in Bogalusa during the period 1958 to decedent’s death on November 8, 1961. She acknowledged she did not live in Poplas Quarters but on the other side of town. However, she testified unequivocally that she frequently visited decedent, her aunt, and knew that appellant stayed with decedent when appellant was in Bogalusa.
Mary Bagent (mother of Allie Mae Bagent, one of the legatees under decedent’s will), testifying on behalf of the legatees, stated she has known decedent and appellant for twenty years during which time she has lived in the same neighborhood as decedent. According to this witness, decedent was not living with appellant when the controversial property was purchased in 1954. The witness further stated that at the time of said purchase decedent was unaware of appellant’s whereabouts. Mary Bagent also testified she visited decedent often, knew decedent to be a hardworking domestic servant who “worked for white people,” and that she frequently assisted decedent by lending decedent money to meet payments on the house. According to this witness, decedent never mentioned receiving money from appellant but, on the contrary, stated appellant never sent her money. She further stated she frequently went to decedent’s home and assisted decedent with her work. She denied appellant lived with decedent on his return from Florida and asserted that on the contrary, he resided with his sister.
Bobby Ray Brown (a third cousin of legatee, Linda Gallo) testified he rented a room from decedent on Austin Street from 1948 to 1949, and on Church Street from 1949 to 1953. During this entire five year period decedent lived alone and appellant was not seen at the home more than two or three times. The substance of his testimony is that on these rare occasions appellant did not live with decedent but merely visited her. From, 1953 to the time of decedent’s death Brown lived in the same neighborhood (about four blocks away) and did not know of decedent and appellant ever living together as man and wife.
Lucille Bean, a neighbor and acquaintance of decedent for many years, testified that when decedent purchased the property in 1954, decedent was living alone. Tersely put, she testified appellant never lived with decedent.
Victoria Haynes, an acquaintance of decedent since 1939, testified she lived in the same neighborhood as decedent. She visited decedent almostly weekly and frequently furnished decedent transportation to and from decedent’s work. According to the witness, decedent was employed as a domestic servant who was hard put to meet the notes due on the property in question. She further stated that on approximately three or four occasions she loaned decedent money to meet installments on the property. In substance she also testified that to her knowledge appellant had not lived with decedent since 1954.
Clarence Statham, an acquaintance of decedent for approximately forty years, testified he was a former owner of the property in dispute herein as well as operator *742 of a grocery located one block from decedent’s residence. Statham testified lie never knew appellant to live with decedent and that although he had heard of appellant he had never seen him. He stated further that he had renovated the house completely a short time before its sale to decedent and contradicted appellant’s testimony to the effect that appellant repaired the porch of the residence subsequent to its purchase by decedent.
Allie Mae Bagent, a legatee under decedent’s will, stated she lived with decedent from 1954 to decedent’s death in November, 1961, except for the period 1956 to 1960 during which the witness attended Southern University. In essence, she testified that during her said residence with decedent appellant and decedent never lived together.
Finally, Linda Gallo, 14 years of age, legatee under decedent’s will and donee in the disputed donation inter vivos executed by appellant January 31, 1962, testified she resided with decedent since her infancy. She frankly conceded she referred to decedent as “Mamma” and appellant as “Daddy” and acknowledged that whereas appellant did visit decedent on occasions he never spent the night in decedent’s home.
We are convinced, as was our esteemed colleague below, the evidence clearly preponderates in favor of the conclusion that decedent was living separate and apart from appellant at the time of the purchase in question and that she remained so until her demise.
Assuming arguendo a valid or putative marriage existed between appellant and decedent as contended by appellant, we believe the named legatees have clearly and fully discharged the duty incumbent ttpon them of establishing the paraphernality of subject property.
Accordingly, the judgment of the lower court is affirmed at appellant’s cost.
Affirmed.