950 So.2d 780 (2006)
Harold CORKERN, II
v.
Susan CORKERN.
No. 2005 CA 2297.
Court of Appeal of Louisiana, First Circuit.
November 3, 2006.
*782 Lila Tritico Hogan, Hammond, Counsel for Defendant/Appellant Susan Corkern.
Dennis John Hauge, Prairieville, Peter Dudley, Baton Rouge, Counsel for Plaintiff/Appellee Harold Corkern, II.
Before: PARRO, GUIDRY, and MCCLENDON, JJ.
GUIDRY, J.
This appeal is taken from a judgment partitioning the community of acquets and gains formerly existing between appellant, Susan Corkern (now Wilhite), and appellee, Harold Corkern, II.

FACTS AND PROCEDURAL HISTORY
The parties were married on October 6, 1990, and divorced on April 4, 2003. The community regime between them was terminated retroactively to July 19, 2002, the date the petition for divorce and partition of community property was filed.
During proceedings to partition the community property, the trial court ruled that a crew boat, the Missie C, which was acquired during the marriage was appellee's separate property, because it was donated to him by his father and was registered with the United States Coast Guard in his name only. However, at a hearing held on newly discovered evidence, appellant attempted to prove the act of donation was a fraud because, although it was dated April 10, 1997, it actually was not executed until after the divorce proceedings began. The trial court concluded the evidence presented *783 was insufficient to overcome the presumption of genuineness of an authentic act. Following an additional hearing, the trial court rendered judgment partitioning the community property. This appeal followed.[1]

ASSIGNMENTS OF ERROR
1. The trial court erred in classifying the crew boat as appellee's separate property.
2. In the alternative, if the crew boat was appellee's separate property, the trial court erred in not allowing appellant's reimbursement claim for note payments and repairs on the boat.
3. The method of allocation of the community assets and liabilities was improper.
4. The trial court erred in (a) not finding the act of donation to be fraudulent, and (b) in ruling it was irrelevant whether it was fraudulent, because there was other sufficient evidence that the crew boat was separate property.
5. The trial court erred in denying all but one of appellant's reimbursement claims, while recognizing all of her former husband's claims.

METHOD OF ALLOCATION
Appellant argues the methodology used by the trial court in partitioning the community constituted an error of law because the court failed to value the assets as required by La. R.S. 9:2801 A(4)(a). The record reveals that, over the objection of both parties, the trial court required each of them to "equitably" divide the community assets into a set of two lists, with each list to be of equal value. The minute clerk then selected one set of lists by random lot. After appellant's lists were selected, the court allowed appellee to choose which of the appellant's two lists of assets he wished to be allocated. Appellant contends the trial court abdicated its adjudicatory function in ordering the parties to determine the values of the assets and to divide them. Additionally, she asserts this method failed to take into account the unique circumstances involved when one of the community assets is a wholly-owned family business managed entirely by one spouse. In the instant case, appellant was allocated Corkern Crew Boat Rentals, L.L.C. (CCBR), a business previously operated by appellee, which she claimed was of little value to her because she was incapable of running it.
At the pertinent time, La. R.S. 9:2801 A(4) sets forth the procedure to be followed in partitioning community property as follows:
The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.

*784 (c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
(e) In the event that the allocation of an asset, in whole or in part, would be inequitable to a party, the court may order the parties to draw lots for the asset or may order the private sale of the asset on such terms and conditions as the court deems proper, including the minimum price, the terms of sale, the execution of realtor listing agreements, and the period of time during which the asset shall be offered for private sale.
(f) Only in the event that an asset cannot be allocated to a party, assigned by the drawing of lots, or sold at private sale, shall the court order a partition thereof by licitation. The court may fix the minimum bids and other terms and conditions upon which the property is offered at public sale. In the event of a partition by licitation, the court shall expressly state the reasons why the asset cannot be allocated, assigned by the drawing of lots, or sold at private sale.
It is mandatory that trial courts follow the rules and procedures outlined in La. R.S. 9:2801 A(4) in partitioning community property. McElwee v. McElwee 93-1010, p. 4 (La.App. 1st Cir.8/17/94), 649 So.2d 975, 977; Thomas v. Thomas, 552 So.2d 793, 795 (La.App. 1st Cir.1989). The trial court herein did not follow these procedures because it failed to value the assets, failed to properly divide the community assets between the parties, and failed to determine if an equalizing payment was required due to an unequal distribution. See McElwee, 93-1010 at p. 4, 649 So.2d at 977. Moreover, because the evidence in the record is insufficient to ascertain a value for CCBR, it is impossible for this court to determine on review if each spouse received property of equal value, or whether one of the parties was entitled to an equalizing sum. Therefore, in view of the trial court's failure to comply with the requirements of La. R.S. 9:2801 A(4), this matter must be remanded to the trial court for the partition of the community property to be properly made in accordance with that provision. See McElwee, 93-1010 at p. 4, 649 So.2d at 977-78.
In making its allocation of assets, the trial court should be mindful of the nature of the assets, the economic condition of each spouse, and any other relevant circumstances. See La. R.S. 9:2801 A(4)(c). For instance, in situations where one of the spouses has controlled and managed a family business, which the evidence indicates the other spouse is incapable of operating, it may be both more practical and equitable to allocate the business to the spouse more capable of operating it. *785 See Ellington v. Ellington, 36,943, pp. 9-11 (La.App. 2d Cir.3/18/03), 842 So.2d 1160, 1167-69, writ denied, XXXX-XXXX (La.6/27/03), 847 So.2d 1269; Mexic v. Mexic, 577 So.2d 1046, 1049 (La.App. 4th Cir.1991). In some cases, the value of the business may even vary depending on which spouse the business is allocated to. Ellington, 36,943 at p. 11, 842 So.2d at 1169. Finally, if the trial court finds it necessary in placing a value on any community asset, including CCBR, the court may appoint an expert for the purpose of appraisal. See La. R.S. 9:2801 A(3).

CLASSIFICATION OF CREW BOAT
Appellant contends the trial court erred in classifying the crew boat, which was valued at $135,000 at the time of trial, as appellee's separate property. Specifically, she argues the court erred in finding appellee's father donated the crew boat to him because: (1) the crew boat was acquired during the marriage with the proceeds of a loan the parties took out together; and (2) the purported act of donation was fraudulently executed and backdated. She further maintains the trial court erred in concluding the crew boat was appellee's separate property on the additional basis that it was registered with the Coast Guard in his name only.
Under Louisiana law, property of married persons is generally characterized as either community or separate. La. C.C. art. 2335. Property in the possession of a spouse during the existence of the community property regime is presumed to be community, but either spouse may rebut the presumption. See La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving the property is separate in nature. Ross v. Ross, 2002-2984, p. 9 (La.10/21/03), 857 So.2d 384, 390. The classification of property as separate or community is fixed at the time of its acquisition. A trial court's finding regarding the nature of property as being either community or separate is a factual determination subject to the manifest error-clearly wrong standard of review. Lytal v. Lytal, XXXX-XXXX, p. 3 (La.App. 1st Cir.11/14/01), 818 So.2d 111, 113, writ denied, XXXX-XXXX (La.3/8/02), 810 So.2d 1164.
Initially, we agree with appellant's contention that the trial court erred in concluding the crew boat should be classified as appellee's separate property because it was registered in his name only. The presumption of community is applicable to property acquired during the marriage, regardless of the registration. See La. C.C. art. 2340; Katherine S. Spaht & W. Lee Hargrave, Matrimonial Regimes, 16 Civil Law Treatise, § 4.6 at 204-05 (2nd ed.1997). Cf. Smith v. Smith, 230 La. 509, 519, 89 So.2d 55, 58 (1956). Thus, the classification of property as separate or community is not determined by the name listed on the title, but rather by the time of acquisition, the nature of the transaction, and the source of funds used to acquire it. See La. C.C. arts. 2338 & 2341; Biondo v. Biondo, 99-0890, pp. 21-22 (La.App. 1st Cir.7/31/00), 769 So.2d 94, 108-09; Johno v. Johno, 93-905 (La.App. 5th Cir.3/16/94), 633 So.2d 966, 969; Spaht & Hargrave, Matrimonial Regimes, 16 Civil Law Treatise, § 3.50 at 189. Thus, the trial court erred in concluding the crew boat was separate on the basis that appellee was the registered title owner.
Since the crew boat clearly was acquired during the marriage, appellee bore the burden of proving its separate nature in order to rebut the presumption of community. See La. C.C. art. 2340; Ross, 2002-2984 at p. 9, 857 So.2d at 390. For this purpose, appellee introduced an act of donation of a movable, in authentic form, dated April 10, 1997, in which his father *786 donated the boat to him. Both appellee and his father testified the donation of the crew boat was intended to be part of appellee's inheritance and his separate property. However, his father also testified it was part of their agreement that appellee would pay off his father's loan with Central Progressive Bank (CPB). Appellee likewise acknowledged that part of the agreement was that he would pay the mortgage on the crew boat.
Under La. C.C. art. 2341, property "acquired by a spouse by inheritance or donation to him individually" is considered the separate property of that spouse. See Robinson v. Robinson, 99-3097, pp. 6-7 (La.1/17/01), 778 So.2d 1105, 1113-14. Article 2341 does not define the term "donation". However, La. C.C. art. 1523 provides that there are three kinds of donations inter vivos: gratuitous, onerous, and remunerative. Only the first two types are pertinent to our discussion.[2] A purely gratuitous donation is one "made without condition and merely from liberality," while an onerous donation is one "burdened with charges imposed on the donee." La. C.C. art. 1523. Louisiana Civil Code article 1524 further provides that an "onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee." Moreover, the rules peculiar to donations inter vivos are not applicable to onerous donations, "except when the value of the object given exceeds by one-half that of the charges or of the services." La. C.C. art. 1526.
In a recent case, the Louisiana Supreme Court construed a constitutional provision prohibiting the "donation" of public property. In doing so, the Supreme Court explained that "[t]he generally understood meaning of a donation is an act whereby one gratuitously gives something to another. The term donation contemplates giving something away. It is a gift, a gratuity or a liberality." Board of Directors of the Industrial Development Board of City of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens of Gonzales, 2005-2298 (La.9/6/06), 938 So.2d 11. On that basis, the Supreme Court concluded the purpose of the constitutional provision prohibiting the "donation" of public property was to prohibit the gratuitous alienation of public property.[3]Board of Directors, 2005-2298 at p. 16, 938 So.2d at 20.
As noted, it was the testimony of appellee and his father that the donation was intended to be part of appellee's inheritance, as well as his separate property. However, their testimony was equally clear that the donation was burdened with charges imposed on appellee, i.e., the crew boat was encumbered with a mortgage of approximately $113,000 that appellee was expected to pay off as part of the deal. Moreover, appellee and appellant obtained a loan at CPB and used the proceeds to pay off his father's loan.[4] Counsel for *787 appellee admitted in brief that appellee's father "received value for the donation," although he erroneously considered that fact to be irrelevant. Further, the trial court, observing that "the mortgage on the donation was somewhere close to whatever the value of the boat was," indicated it might be able to find the transaction was a simulation. Nevertheless, in finding that appellee had rebutted the community presumption with respect to the crew boat, the trial court relied on the fact that there was a donation, without considering whether it was a real donation.
Given the circumstances, we find the trial court committed manifest error and was clearly wrong in finding appellee met the burden of rebutting the community presumption applicable to the crew boat. Appellee failed to prove he acquired the boat by a real donation. Although appellee proved the existence of an onerous donation, he failed to establish the value of the crew boat manifestly exceeded the approximately $113,000 charge imposed on him. See La. C.C. art. 1524. Under La. C.C. arts. 1524 and 1526, an onerous donation is not considered to be a real donation unless the value of the donated object exceeds by one-half the value of the charges imposed. Appellee failed to present evidence to establish the donation of the crew boat was a real donation under these codal provisions. Therefore, since the presumption of community was not rebutted, the crew boat must be classified as community property.[5]

REIMBURSEMENT CLAIMS
Appellant contends the trial court erred in awarding all of appellee's reimbursement claims, while denying all but one of hers. When a spouse uses separate funds to pay a community obligation, that spouse is entitled upon termination of the community to reimbursement for one-half of the amount paid. See La. C.C. art. 2365. The burden of proof is on the party claiming reimbursement. Charles v. Charles, XXXX-XXXX, p. 7 (La. App. 1st Cir.2/10/06), 923 So.2d 786, 789. A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard. See Kline v. Kline, 98-1206, p. 4 (La.App. 3rd Cir.2/10/99), 741 So.2d 670, 672.
In this case, appellant contends the trial court should have awarded her the following reimbursement claims: (1) $758 attributable to a tax refund; (2) $818.19 for health insurance premiums paid by CCBR on behalf of appellee; (3) $3,225 as her share of a check drawn on CCBR's account by appellee several days before the community terminated; (4) $1,442 for personal telephone bills of appellee paid by CCBR; and (5) $292 for personal utility bills of appellee paid by CCBR. Based on our review, we find no *788 error in the trial court's rejection of these claims.
The only evidence appellant offered in support of the first claim was her testimony that appellee admitted taking the tax refund and a letter from their accountant stating a refund was due. Since this was a factual determination, we cannot say the court committed manifest error in rejecting the claim, particularly since the refund was received prior to the termination of the community and could have been used to benefit the community. Appellant's remaining reimbursement claims all relate to payments made by CCBR. Thus, appellant's proper remedy, if any, lies in her mismanagement claim relative to CCBR. In any event, the evidence was insufficient to establish what portion of the total utility and telephone bills paid by CCBR may have been attributable to appellee personally. We also note the payment of appellee's health insurance premiums could be considered a valid business expense since he was working for CCBR at the time.
Appellant also complains the trial court erred with respect to several of the reimbursement claims awarded to appellee, either because the full amount of the award was not proven or because there was no evidence the debt was a community obligation. Our examination of the record reveals the trial court did commit manifest error as to the following reimbursement claims. First, the trial court erred in awarding appellee reimbursement in the amounts of $10,009 for community tax payments, $445 for boat slip rentals, and $3,768 for loan payments to Gulf States Bank (GSB), since the checks appellee introduced into evidence supported awards of only $8,250, $90, and $638.28, respectively, for these claims. As to the $1,093 award for truck insurance payments, appellant asserts appellee proved payments of only $113. We agree the award must be reduced, because the record does not support any award beyond that amount. Further, the trial court manifestly erred in ordering reimbursement to appellee in the amounts of $417 for loan payments to CPB and $2,649 for payments on a VISA account with First National Bank of Omaha (FNB). Although appellee presented records showing payments were made on the loan and the FNB account, he failed to document that the payments were made with his separate funds. Thus, these claims should have been denied in their entirety.
Accordingly, the reimbursement awards to appellee must be amended as follows: the award for tax payments must be reduced to $8,250; the award for boat slip rentals must be reduced to $90; the award for truck insurance payments must be reduced to $113; and, the award for GSB loan payments must be reduced to $638.28. The reimbursement awards made with respect to the CPB loan and the FNB account are reversed.

CONCLUSION
For the above reasons, the ruling of the trial court that the crew boat, the Missie C, should be classified as Harold Corkern's separate property, rather than as community property, is reversed. That portion of the trial court judgment awarding reimbursement to Harold Corkern in the amount of $27,421 is hereby amended to reduce that award to the amount of $18,131.28. Further, the partition judgment is vacated, and this matter is remanded to the trial court for further proceedings consistent with this opinion. The judgment of the trial court is affirmed in all other respects. The costs of this appeal are assessed to Harold Corkern, II.
AFFIRMED IN PART, AMENDED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.
PARRO, J., concurs and assigns reasons.
*789 PARRO, J., concurring.
I agree with the majority's resolution of the issue pertaining to the classification of the crew boat; however, I believe that the trial court's erroneous classification of this property was the result of legal error as opposed to manifest error. For this reason, I respectfully concur.
NOTES
[1] In brief, appellee contends this appeal is improper, because the partition judgment is not final since there are rules still pending, including appellant's corporate mismanagement claim, a motion to compel discovery, and various other issues involving contempt. However, the partition judgment specifically noted that those matters were not part of the partition of community property. Under La. C.C.P. art. 1915 A(4), a judgment signed on a principal demand that has been tried separately may be a final judgment, even if the judgment does not grant the successful party all the relief prayed for, or does not adjudicate all of the issues in the case. A final judgment that falls under La. C.C.P. art. 1915 A is appealable without the necessity of being so designated. See La. C.C.P. art. 1911.
[2] A remunerative donation is one made in recompense for services rendered. See La. C.C. art. 1523. No evidence was presented herein to suggest the crew boat was donated to appellee to recompense him for services rendered.
[3] While the Supreme Court indicated the donor's intent was determinative, it did not rely merely upon the parties' statements of their intent, but also examined the respective obligations undertaken by them in determining whether the arrangement between them was gratuitous. Based on the real and substantial obligations undertaken by the alleged "donee," the Supreme Court concluded it was not a gratuitous arrangement. Board of Directors, 2005-2298 at p. 16, 938 So.2d at 20.
[4] While appellee admitted in brief that the loan on the crew boat was paid off by a loan "executed by Hal and Susan Wilhite [Corkern]," he also claims that loan was "in the name of the corporation, Corkern Crew Boat Rentals, L.L.C." The record does not support this claim. Bank documents show the loan was taken out in the name of Harold and Susan Corkern, d/b/a Corkern Crew Boat. Further, Harold and Susan Corkern signed the promissory note evidencing the loan individually, rather than in a representative capacity on behalf of CCBR, which bound them individually for the debt. Moreover, after $113,092.41 of the loan proceeds was applied directly to pay off the loan of appellee's father, a check for the residual proceeds of $2,907.50 was issued in the name of "Harold and Susan Corkern."
[5] In view of this conclusion, we pretermit the following issues raised by appellant in brief: (1) the alternate claim for reimbursement for the alleged use of community funds to acquire and repair the boat; (2) the claim that appellee judicially confessed the crew boat was community property; and (3) the claim that the act of donation was fraudulent.